UNITED STATES, Appellee

v

EDWARD E. HATTER, Basic Airman, U. S. Air Force, Appellant

8 USCMA 186, 23 CMR 410

No. 9681

Decided July 26, 1957

*Captain John H. Leonard* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Stanley S. Butt* and *Lieutenant Colonel Ellis L. Gottlieb.*

*Captain John W. Fahrney* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged with absence without leave and larceny, in violation of Articles 86 and 121, Uniform Code of Military Justice, 10 USC §§ 886 and 921, respectively. He was tried and convicted by a special court-martial and received a sentence of bad-conduct discharge, partial forfeitures of pay and allowances, and confinement at hard labor for six months. Intermediate appellate agencies affirmed both the findings and sentence, and we granted accused's petition for review to consider whether he was prejudiced by trial counsel in his closing arguments to the court-martial.

The trial proceedings, insofar as they are pertinent to the contentions of the adversaries on this appeal, are hereinafter related generally. When arraigned on the two charges, accused pleaded guilty to the offense of unauthorized absence from August 28, 1956, to September 2, 1956. In addition, he pleaded not guilty to the alleged larceny of a radio but guilty to the lesser included offense of wrongful appropriation of that item. As part of the Government's case, his pretrial statement was admitted in evidence, attesting that on August 27, 1956, he had pawned the radio, intending to redeem it on payday. He did not testify in his own behalf, but defense counsel produced one witness, who testified that on or about the 24th of August he accompanied the accused on a trip to a pawnshop; that accused there pawned a radio; and that accused told him at that time that it must be redeemed on payday. Both sides then rested, and after the Government had waived opening arguments, defense counsel delivered his summation to the court. Recognizing that the only issue in the case was whether his client at the time of the taking intended permanently to deprive the true owner of the radio, defense counsel argued that the mere pawning of the article did not establish such intent under the circumstances of this case. He, of course, conceded that the intent to deprive temporarily was established by the evi-

**187**

dence and the plea of guilty to the lesser included offense. In reply, trial counsel contended that the facts established the intent requisite for larceny beyond a reasonable doubt, and he sought to strengthen his side of the argument by adopting the following strategy. He obtained a copy of the Manual for Courts-Martial, United States, 1951, and then stated: "I would like to support this by a reading from the Manual, paragraph 200a, subparagraph 6, and I will just read a few sentences." Beginning with the sentence: "The existence of an intent to steal must, in most cases, be inferred from the circumstances," he continued on in the subparagraph, interspersing points of comparison between the Manual language and the case under trial until he reached the following passage upon which, without comment, he concluded his argument:

". . . Consequently, a person may be guilty of larceny even though he intends to return the property ultimately, if the execution of that intent depends on a future condition or contingency which is not likely to happen within a reasonably limited and definite period of time. Thus one may be found guilty of larceny who conceals the property of another with intent to retain it until a reward is offered for it, or who pawns the property of another without authority, intending to redeem it at an uncertain future date and then return it . . ."

Defense counsel rose in rebuttal to state that the final sentence quoted to the court members had no application in the case since this accused intended to redeem the pledged article at a definite time, not at an uncertain future date. However, he did not object to the argument made by trial counsel, and he did not request an instruction to the effect that the court should disregard the statements made by the prosecutor.

In order to dispose of the issue properly, we are called upon to consider the two following propositions: Was the court-martial misinstructed and, if so, was there a waiver of the error?

We are convinced that the court-martial would accept the principles read from the Manual by trial counsel as being the law of the case. We reach that conclusion because he was a certified lawyer; he was permitted by the Manual to advise the president of a special court-martial; the instructions given by the president were in typewritten form; and, they were delivered to the court by trial counsel. Under those circumstances, trial counsel was the fountain of legal information of the court and he spoke the law. Occupying that preferred position, it was imperative for him to use only the law applicable to the case, for the members of the special court-martial were justified in placing reliance on his judgment. However, law inappropriate to the facts of the case was injected into the trial by him, and the president and the triers of fact could not be expected to question his application of the principle. Therefore, there is more than a fair risk that the court members may have been led to believe that the two Manual sentences, with which trial counsel concluded his remarks, controlled the element of intent.

We believe United States v Johnson, 3 USCMA 709, 14 CMR 127, is largely dispositive of the issue in this case. In that instance, the accused admitted pawning the clothes of another soldier with the intent to redeem them upon receipt of his wife's allotment check and then return the clothes to their true owner. In the course of a holding that wrongful appropriation was raised reasonably as an included offense, we treated the Manual passage under present consideration as follows:

". . . a pawning plus an intent to redeem at an uncertain future time must normally be equated to larceny. On the other hand, we would not be inclined to consider that an intent 'to redeem it at an uncertain future date,' as used in the Manual, embraces an intent to redeem following receipt of pay and allowances at the end of the month. Although the alleged intent to redeem in this case be viewed as conditioned on receipt of Mrs. Johnson's monthly

allotment check, we cherish sufficient confidence in the efficiency of the military service's finance authorities to avoid holding such receipt to be an 'uncertain' event under Manual language."

Civilian law has adopted the same general principle, for we find the following language in 52 CJS, Larceny, § 27b(3), page 823:

"One who takes the goods of another and pawns them is guilty of larceny if he has no intention of redeeming them and restoring them to the owner, or, it seems if the intention to redeem is only a vague and indefinite one; but it has been held that, if the intention was merely to pawn the goods for a time and then redeem them and restore them to the owner, and the party had a fair and reasonable expectation of being able to redeem, he is not guilty of larceny."

In this case, accused admitted taking and pawning another's radio but pleaded in defense that the transaction was temporary in that he intended to redeem it on payday, some three days hence. The expectation that he would be able to do so was certainly reasonable and fair, considering that the article was worth less than $20. His avowed intent was feasible, therefore, and the court members had only to decide whether to accept or reject his explanation. In asking us to reject the assertion, Government counsel point to the circumstance of the accused's absence without leave as thoroughly discrediting his avowed intent and rendering it unworthy of belief. But that evidence is not of such a compelling nature that we should hold, as a matter of law, that accused's intent was to deprive the owner permanently of his property. The purpose of such evidence may be in favor of that intent, but it is by no means conclusive.

As previously noted, defense counsel did not object to the presiding officer's instructions to the court, although he argued that counsel's statement of law was inapplicable to the facts of the case. The Government points to the fact that

he was a lawyer certified by The Judge Advocate General of the Air Force and thus should be held to have waived the error now asserted on appeal. We have not been disposed to enforce the doctrine of waiver in special court-martial trials, and the facts of this case convince us to stay within that doctrine. True it is that lawyers tried the case, but the presiding officer was not trained in the law, and undoubtedly trial counsel was the oracle through which the court received its instruction on the law. When consideration is given to that fact and the further circumstance that he reinforced his views by reading from the Manual, it is not unreasonable to assume that his pronouncements would be accepted by the court as the law, regardless of any objection by defense counsel. At least the latter did argue the irrelevancy of the provision and in that way sought to call attention to the error, but trial counsel did not recede from his position. We incline to the view that, in special court-martial cases, trial counsel occupies a position which casts on him a duty not to misapply the law in his arguments and when he is a lawyer and adviser to the court-martial and he misinformed it in a critical area, waiver of the error by equally qualified defense counsel will not be enforced.

The decision of the board of review is reversed, and the record is returned to The Judge Advocate General of the Air Force with directions to refer the record to a board of review. A rehearing may be ordered or a sentence appropriate for the included offenses to which the accused pleaded guilty may be imposed.

Judge FERGUSON concurs in the result.

QUINN, Chief Judge (concurring in the result):

One of the elements of larceny is that the accused had an "intent permanently to deprive" the owner of his property. Article 121, Uniform Code of Military Justice, 10 USC § 921. An intent to return, although predicated upon an uncertain event, does not satisfy this requirement. We had a very similar

situation before us in United States v Rushlow, 2 USCMA 641, 10 CMR 139. That case was concerned with desertion, which requires an intent to remain away permanently. The Manual provides that: "A purpose to return, provided a particular but uncertain event happens in the future, may be considered an intent to remain away permanently." We condemned an instruction based upon that provision in the following language:

"... The practical effect of such an instruction was to render the accused's explanation no more than a judicial confession and its legal effect was to announce a new rule of law, that is, specific intent to remain away may be established by proving an intent to return if the latter is based on a contingency. Accused's only defense was predicated upon a qualified intent to return to the service but the members of the court-martial lent to one which purposed an intent to remain away forever. While an were instructed that this mental condition could be considered as equiva-

intent to return based on a contingency might be rejected as a defense to a crime otherwise established, it is difficult to support a statement to the effect that it establishes an essential element to remain away permanently when it has a tendency to prove the opposite."

Here, paragraph 200*a*(6) of the Manual provides that a person may be guilty of larceny:

"... even though he intends to return the property ultimately, if the execution of that intent depends on a future condition or contingency which is not likely to happen within a reasonably limited and definite period of time."

The effect of this language is the same as that which we condemned in Rushlow. Consequently, I disagree with the implication of the principal opinion that the Manual's discussion sets out a correct principle of law. In other respects, I agree generally with the principal opinion's consideration of the case, and I concur in the result.