UNITED STATES, Appellee

v

RICHARD L. CHRISTOPHER, Seaman,
U. S. Navy, Appellant

13 USCMA 231, 32 CMR 231

No. 15,721

August 3, 1962

*Lieutenant Colonel A. M. Hearn*, USMC, argued the cause for Appellant, Accused. With him on the brief was *Commander John D. Moroney*, USN.

*Commander Benjamin H. Berry*, USN, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Commander Leo F. O'Brien*, USN.

## Opinion of the Court

KILDAY, Judge:

Accused was charged, before a special court-martial, with the shipboard larceny of a camera and certain accessories of a value of about $152.00 from a shipmate. He pleaded not guilty to larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, but guilty to the lesser included offense of wrongful appropriation of the property, contrary to the same Article. After evidence was presented as to the circumstances surrounding the offense, the court-martial convicted accused of larceny as charged, and sentenced him to be separated from the service with a bad-conduct discharge. Those proceedings were approved, in turn, by the convening authority and the supervisory authority exercising general court-martial jurisdiction.

A board of review in the office of The Judge Advocate General of the Navy, however, affirmed only the lesser included offense of wrongful appropriation. The board went on to state that "Although . . . [it had] modified the findings, . . . [it found] the sentence nevertheless appropriate in the circumstances of this case." Accordingly, the board of review affirmed the same punishment previously adjudged and approved.

Upon accused's appeal to this Court pursuant to Article 67(b)(3), Uniform Code of Military Justice, 10 USC § 867,

232

we granted review in order to consider arguments on two issues.

## I

The first assignment of error requires that we determine:

Whether the accused was entitled to a sentence rehearing where the board of review reduced the finding of larceny to wrongful appropriation but approved the sentence as adjudged.

The board gave as reason for its action reducing the finding to the lesser included offense, the fact that trial counsel, in his argument on the merits, quoted a portion of paragraph 200a(6), page 360, Manual for Courts-Martial, United States, 1951. The part thereof seized upon by the prosecution provides that, in a charge of larceny, an intent to steal is implicit in a wrongful and intentional dealing with the property of another in a manner likely to cause him to suffer a permanent loss thereof, and that one may be found guilty of larceny "who pawns the property of another without authority, intending to redeem it at an uncertain future date and then return it."

In light of the posture of the instant case as it comes before this Court and, in view of the conclusion we reach, there is no occasion for inquiry into the correctness of the board of review's action in affirming only the included and less grave offense; the same is not requisite to resolution of the question presented by the first issue. Accordingly, the author Judge need not discuss and may pretermit development of his personal views as to whether the foregoing language of the Manual for Courts-Martial, United States, 1951, states the correct principle of law, or whether the proper concept is contained in the decisions of this Court to the contrary. See United States v Johnson, 3 USCMA 709, 14 CMR 127; United States v Hatter, 8 USCMA 186, 23 CMR 410; United States v Griffin, 9 USCMA 215, 25 CMR 477; 52 CJS, Larceny, § 27b(3), page 823; Perkins, Criminal Law, page 226 (1957); Clark and Marshall, A Treatise on the Law of Crimes, 6th ed, § 12.04, page 733.

Neither is there any necessity for the author to inquire into the propriety of including such language in the instructions to the court-martial. United States v Griffin, supra. Likewise, there is no occasion for him to set forth his views as to whether there is a material distinction between the use of such language in instructions to the court-martial and the argument of trial counsel. United States v Hatter, supra; United States v DeMaris, 8 USCMA 750, 25 CMR 254. Discussion of all these matters may appropriately be pretermitted.

Article 66(c), Uniform Code of Military Justice, 10 USC § 866, provides that a board of review, after acting on the findings, shall affirm "the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." It is to be noted that, although the language of the Code, supra, places no express limitation on the nature of the power given to the board, it is true that powers sounding in the nature of commutation by the convening authority and board of review were denied by this Court in United States v Bigger, 2 USCMA 297, 8 CMR 97; United States v Cavallaro, 3 USCMA 653, 14 CMR 71; United States v Freeman, 4 USCMA 76, 15 CMR 76; and United States v Goodwin, 5 USCMA 647, 18 CMR 271. But in United States v Russo, 11 USCMA 352, 29 CMR 168, those cases were overruled. See also United States v Plummer, 12 USCMA 18, 30 CMR 18; United States v Christensen, 12 USCMA 393, 30 CMR 393. Conceding that in the past there had been some confusion as to the power to change a sentence imposing punitive separation from the service to confinement or forfeitures, after those decisions such confusion no longer existed. And subsequent holdings have further clarified the area. United States v Smith, 12 USCMA 595, 31 CMR 181; United States v Johnson, 12 USCMA 640, 31 CMR 226; United States v Fredenburg, 12 USCMA 646, 31 CMR 232; United States v Rodriguez-Garcia, 12 USCMA 647, 31 CMR 233; United

States v Prow, 13 USCMA 63, 32 CMR 63. While the last-mentioned cases had not been decided by this Court at the time the board of review considered the instant case, *Russo, Plummer,* and *Christensen,* supra, were available precedents for the board's guidance. And in light of those three holdings there could be no question of the board's authority to modify accused's sentence, if it so chose, in ruling on its appropriateness. It is clearly settled, then, under our decisions—even at the time the board of review acted in the case presently at bar—that such reviewing authorities possess the power to modify a sentence to punitive separation in assessing its appropriateness. Against that backdrop the board nonetheless found accused's sentence to bad-conduct discharge appropriate for the lesser offense it sustained.

While manifestly the board of review is not restricted, upon reassessment, to affirmance of the previously approved sentence *in specie* and *in toto,* nor barred from remanding an appropriate case for a rehearing on sentence if such action be deemed the proper course, we are unable to agree with appellant that any requirement existed for the board to direct a rehearing on the sentence in this case. The defense contends that if the bad-conduct discharge adjudged by the court-martial was an appropriate punishment for larceny, then no appellate reviewing body can reasonably conclude that the court-martial would have imposed the same punitive separation for the "materially less grave" and comparatively minor offense of wrongful appropriation. We cannot accept that assertion. The board of review had the power to determine the appropriateness of the sentence for the lesser included offense which it had approved. The Uniform Code of Military Justice provides the nature of appellate review and the authority possessed at each stage, and the unique military procedure prescribed by the Code has been approved by the Supreme Court of the United States. Jackson v Taylor, 353 US 569, 1 L ed 2d 1045, 77 S Ct 1027 (1957); Fowler v Wilkinson, 353 US 583, 1 L ed 2d 1054, 77 S Ct 1035 (1957). See also Carter v McClaughry, 183 US 365, 46 L ed 236, 22 S Ct 181 (1902). And see United States v Jones, 10 USCMA 122, 27 CMR 196; United States v French, 10 USCMA 171, 27 CMR 245; United States v Miller, 10 USCMA 296, 27 CMR 370.

But the defense argues that, while this Court does not possess the power to accomplish a sentence reassessment or to review a sentence for appropriateness as an issue of fact, the Court is empowered to determine whether punishment is appropriate as a matter of law. On the other hand, the Government urges that, except where the sentence is illegal, the penalty imposed by a court-martial and approved by intermediate appellate authorities is a question of fact and therefore not reviewable by this Court. The Government insists that the one exception to this rule is the situation in which, after appellate action on findings, a maximum penalty is approved for the remaining and essentially only technical violation. United States v Voorhees, 4 USCMA 509, 16 CMR 83.

It may be noted Article 67(d), Uniform Code of Military Justice, 10 USC § 867, provides that "The Court of Military Appeals shall take action only with respect to matters of law." While comparison of the appropriate Articles of the Code makes it obvious the Congress did not intend that this Court pass on sentence appropriateness in the same manner as convening and supervisory authorities, or boards of review, we are quick to point out no "matters of law" are excluded from our consideration by the Uniform Code. It is well settled in Federal appellate courts that it is a question of law whether there is any substantial evidence to support a verdict, finding or judgment. 36 CJS, Federal Courts, § 297(2), page 1089. This principle was recognized by this Court in its very first reported decision, United States v McCrary, 1 USCMA 1, 1 CMR 1. The statement of the principle has been repeated innumerable times and the principle has been consistently followed.

We see no material difference between the sufficiency of the evidence to support a conviction as a matter of law and the appropriateness of a sentence as a matter of law. The late Judge Brosman, writing for a unanimous Court, noted the distinction between appropriateness as a matter of fact and as a matter of law in the very early case of United States v Keith, 1 USCMA 442, 450–51, 4 CMR 34:

". . . This Court has no statutory authority to make such a determination [of appropriateness] as a matter of fact and in this case. We prudently leave for future consideration the question of whether appropriateness—or its opposite—may be determined by us in a proper case as a matter of law."

Again, in United States v Field, 5 USCMA 379, 382, 18 CMR 3, Judge Brosman stated for the Court:

". . . We have repeatedly emphasized that we hold no warrant to determine the appropriateness of a court-martial's sentence, although we have not denied the possession of power in a proper case to declare punitive action inappropriate as a matter of law."

See also United States v Voorhees, supra. And in his separate opinion in United States v Stene, 7 USCMA 277, 22 CMR 67, Chief Judge Quinn indicated his firm conclusion that this Court was not wholly powerless to review a sentence, referring with strong approval to both of the statements quoted immediately hereinbefore.

It is clear from both the Voorhees and Stene cases, supra, that the necessity for the board of review to order a rehearing on sentence, rather than to reassess the same itself, stemmed from the former holding that the sentences there involved were not subject to modification by the convening authority or the board of review—a position no longer tenable in the light of Russo and allied cases, supra—and turned on whether the punishment was grossly disproportionate to the findings approved on review.

Whereas in this case it appears the Government would deny the power in this Court to deal in anywise with the appropriateness of the sentence, relying upon Voorhees and Stene as authority for that proposition, those cases fail to support the position advanced. Actually, in Voorhees this Court held that where the board of review had dismissed all of the major charges and sustained only a technical violation of a regulation, an approved sentence of dismissal from the service was exceedingly severe, and we thereupon ordered a rehearing. Government counsel, as we have previously noted, contend that the factual situation above is the only instance in which this Court may examine appropriateness. Although we regard that case as an occasion where such action may be taken, we find therein nothing to indicate it to be the only situation. And critical examination of our holdings compels the conclusion it is not.

In United States v Stene, supra, the accused was charged with three violations. One thereof was disapproved and two affirmed. This Court held that the two remaining charges were serious crimes and, therefore, it could not be said the board of review abused its discretion in affirming the sentence of dismissal.

A close analysis of both Voorhees and Stene leads to the inevitable conclusion that this Court, in each, examined into the appropriateness of the sentence as a matter of law and determined the penalty in Voorhees—even though within legal limitations—could not be held, by legal standards, to be appropriate, whereas under the circumstances in the Stene case the sentence could fairly be deemed to be appropriate as a matter of law. See also Justice Clark's discussion of Voorhees in Fowler v Wilkinson, supra, 353 US at page 585.

Rather than being the sole exception, as the Government contends, it might be said Voorhees is the diagnosis of a symptom which proves the existence of the disease. The disease is inappropriateness.

In determining whether, in a given case, inappropriateness exists as a matter of law, this Court will proceed in

a fashion identical to its procedure in determining the sufficiency of the evidence as a matter of law. In United States v Hendon, 7 USCMA 429, 22 CMR 219, this Court rather succinctly stated that procedure:

"In United States v Moreno, 6 USCMA 388, 20 CMR 104, we recognized that boards of review have been given plenary fact-finding powers by Article 66(c) of the Code, 50 USC § 653, subject only to the limitations that they bear in mind that the trial forum saw and heard the witnesses and that their action must not be arbitrary, capricious, or one which no reasonable person would take. A necessary corollary to the Moreno holding may be found in United States v Bunting, 6 USCMA 170, 19 CMR 296, where we held that if a board of review clearly exercised only its power to make factual determination in a situation where reasonable men might differ as to whether the government had carried its burden of proving guilt beyond a reasonable doubt, we had no authority to review its decision. Of course, a board of review may not defeat review in this Court by labeling as questions of fact those matters which are questions of law or mixed holdings of law and fact. United States v Benson, 3 USCMA 351, 12 CMR 107."

We hasten to emphasize that we should not be considered as arrogating to ourselves, under the guise of a legal label, the power to determine or pass on factual questions of sentence appropriateness. Such is not our intention. Quite clearly, and not inadvisedly, Congress denied this Court such authority under the Uniform Code of Military Justice. We entertain no thought of embarking on a wholesale review of sentences. To the contrary, we here expressly recognize only that prerogative we conclude has been vested in this Court from the inception of the Uniform Code—to examine both the legality of an accused's punishment and, *as a matter of law only,* its appropriateness.

Bearing those factors in mind, we turn to consider whether accused was

**236**

entitled to a sentence rehearing due to the board of review's ■ action reducing the finding of larceny to wrongful appropriation. The sentence is within the legally permissible limits and, as we have previously indicated, there was no mandatory requirement that the board of review order a rehearing. The board had full authority to modify the bad-conduct discharge in assessing an appropriate sentence, even though such action might involve changing the type of punishment. Reduction to the lesser included offense did not, of itself, require a reduction of the sentence, and Article 66(c), Uniform Code of Military Justice, supra, places no such necessity upon the board of review. Rather, that Article provides that the board of review shall "affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, *on the basis of the entire record,* should be approved." (Emphasis supplied.)

We next proceed to determine whether the action of the board of review in approving the sentence was arbitrary, capricious or one which no reasonable person would have taken. If any one thereof be present, the action taken by the board of review would be inappropriate as a matter of law, and this Court may so determine.

The board of review was free to consider whether the offense of wrongful appropriation was aggravated by reason of being committed against a shipmate aboard ship; that the property was of a value three times the minimum necessary to justify the highest punishment for larceny or for wrongful appropriation of the type property here involved; that the sentence was to bad-conduct discharge only, whereas the maximum imposable punishment would permit six months' confinement, and other accessories in addition; that in the present case the rightful owner was deprived of the possession, use and enjoyment of his property for a somewhat prolonged period of time; and that restitution was offered only after charges had been preferred—indeed,

only the very day prior to trial. For considerations contrary to those factors, the board of review could take into account, *inter alia,* that accused entered a plea of guilty to the lesser included offense of which he now stands convicted; that the court-martial fixed the sentence of bad-conduct discharge upon a conviction of the more serious offense, larceny; and that restitution was in fact made.

These matters, among others, were available for the board of review to be taken into account. In adjudging the proper penalty to fit the crime and the offender many considerations may enter the picture. In civilian courts, quite frequently, minimum and maximum penalties exist and the maximum for the lesser offense is frequently the minimum for the higher offense. Such provisions are not invalid.

We are not able to say that this board of review acted arbitrarily or capriciously, nor that under the facts of this case, no reasonable men would support the conclusion reached. Therefore, the sentence is not inappropriate as a matter of law and we must affirm the action of the board of review with reference thereto.

## II

We turn now to consideration of the second issue. It poses the question:

Whether the accused was prejudiced by the reference to new and unfavorable matter from outside the record in the staff legal officer's review, where he was not given an opportunity to rebut the same.

Appellant relies upon United States v Vara, 8 USCMA 651, 25 CMR 155; United States v Griffin, 8 USCMA 206, 24 CMR 16; and United States v Lanford, 6 USCMA 371, 20 CMR 87.

The language appearing in the post-trial review, of which complaint is made, reads as follows:

"In the synopsis of conduct, executed by the ship's supply officer, there appears a statement that the accused was a storekeeper striker for approximately 6 months during which time he showed interest and aptitude, but this later declined to such an extent that he no longer demonstrated any interest and appeared to lack motivation. As a result, his petty officers were required to correct his work and he was reassigned to the deck force."

The staff legal officer to the officer exercising general court-martial jurisdiction concluded that the above synopsis—apparently considered by the special court-martial convening authority in taking his action—contained no prior offenses, and the legal advisor informed his superior that he did not deem the small comment concerning the accused's work by his division officer to be of such nature as to have had any effect upon the sentence. He therefore considered it to be unnecessary to return the record for possible comment by the appellant.

Again we repeat our injunction that it would be much the preferred practice to afford accused persons the opportunity to explain or rebut unfavorable comments of whatever sort. Nonetheless, under the circumstances and in view of the nature of the comment with which we are presently concerned, we believe the risk of prejudice to the accused, if any, is too insubstantial to justify reversal and the ordering of a new post-trial review. United States v Sarlouis, 9 USCMA 148, 25 CMR 410; United States v Taylor, 9 USCMA 34, 25 CMR 296.

Moreover, as may be seen, this is not a situation where the special court convening authority's consideration of allegedly adverse matter has gone unnoted at other levels. The staff legal officer to the supervisory authority apprised his superior of the matter and that accused had not been afforded the opportunity for explanation or rebuttal. Additionally, however, the staff legal officer specifically advised the officer exercising general court-martial jurisdiction that the comment was unimportant and would have no impact on sentence. We have uniformly held that errors of this sort may be purged of prejudice by reconsideration without regard to the adverse matters. Here the

supervisory authority evaluated the appropriateness of sentence in light of his legal expert's conclusion that the comment in question was inconsequential, and thereafter, in that context, the board of review again reassessed accused's punishment. See United States v Crusoe, 3 USCMA 793, 14 CMR 211; United States v Reiner, 8 USCMA 101, 23 CMR 325; United States v Peters, 8 USCMA 520, 25 CMR 24.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree that, under the particular circumstances of this case, the board of review did not abuse its discretion in choosing to reassess the sentence imposed by the court-martial rather than to order a rehearing on the sentence. Nevertheless, I entertain some substantial doubt concerning whether the problem before us really involves whether this Court—to which Congress had confided only jurisdiction over questions of law—has the authority to upset an honest determination by the board that a legally proper sentence is, considering the accused and the offenses which it has approved, factually appropriate. Compare Uniform Code of Military Justice, Article 66, 10 USC § 866, with Code, supra, Article 67, 10 USC § 867. Rather, I believe that the real issue is whether the board abused its discretion in assuming to correct the sentence itself instead of returning the case for a rehearing on the penalty before a tribunal which is better fitted to litigate the matter. Whether the board so abused its discretion is, of course, a question of law whose review is well within our competence. United States v Oakley, 7 USCMA 733, 23 CMR 197; United States v Voorhees, 4 USCMA 509, 16 CMR 83; United States v Stene, 7 USCMA 277, 22 CMR 67.

The basis for my qualms concerning the development of the principal opinion in this area may be simply stated. Assume *arguendo* that, in a particular case, we find the sentence which the board approved inappropriate as a matter of law for the offense of which accused was convicted, and, as we did in *Voorhees,* supra, remand the case with directions to order a rehearing. Assume further that a court-martial, upon such rehearing, imposes the very sentence which, although within legal limits, we had earlier held inappropriate. Under any of the cases upon which my brothers rely—indeed, by the very limitation which Congress has put upon us in Code, supra, Article 67— we would, I suggest, be powerless to upset the trial forum's determination of this purely *factual* question. And, certainly, from all that the principal opinion states, my brothers admit there would be no justiciable controversy before us, if the board of review in this case had so ordered a rehearing on sentence and the same penalty had again been imposed.

Thus, the question before us does not seem to be one of appropriateness, for a bad-conduct discharge may well be—as the board of review factually found—an entirely correct punishment for one who wrongfully appropriated property of a fellow sailor, of a value of $152.00, and subsequently entrusted it to the not always secure custody of a pawnbroker. Rather, as noted above, our inquiry is limited to whether, as a matter of law, the board of review should have ordered another trial on the sentence. And, in light of the presence in this record of the factors which Judge Kilday has so ably summarized, it is clear that we cannot upset the board's exercise of its discretion. Cf. Jackson v Taylor, 353 US 569, 1 L ed 2d 1045, 77 S Ct 1027 (1957); Fowler v Wilkinson, 353 US 583, 1 L ed 2d 1054, 77 S Ct 1035 (1957). Accordingly, I concur with the disposition of the issue, but disassociate myself from those portions of the principal opinion which seem to indicate this Court's intention, under the guise of reviewing questions of law, to assume authority which the Congress has denied them.

With respect to the second issue before the Court, I regretfully must announce my disagreement with the majority's conclusion that Christopher was not harmed by inclusion in the con-

238

vening authority's action and the staff legal officer's review of adverse information without the opportunity to rebut or explain it.

Attached to the convening authority's action in the case was the following statement:

"SYNOPSIS OF CONDUCT

"NATURE OF OFFENSES COMMITTED: None

"NON-JUDICIAL PUNISHMENT IMPOSED: None

"MEDALS, AWARDS, AND COMMENDATIONS: None

"CHRISTOPHER served in the capacity as an SK striker for approximately six (6) months. Initially he showed some interest and aptitude. However, he quickly declined and reached the point where he showed no interest and completely lacked any motivation. His Petty Officers were constantly having to correct jobs that he did. He was recently reassigned to the deck force.

/s/ J. L. Long
Lt jg (SC) USNR"

The review of the staff legal officer to the supervisory authority made the following comment with respect to the foregoing document:

"In the synopsis of conduct, executed by the ship's supply officer, there appears a statement that the accused was a storekeeper striker for approximately 6 months during which time he showed interest and aptitude, but this later declined to such an extent that he no longer demonstrated any interest and appeared to lack motivation. As a result, his petty officers were required to correct his work and he was reassigned to the deck force. . . . Synopses which contain derogatory material gathered from sources outside of a service record should ordinarily be submitted to an accused for comment (U. S. v VARA, 25 CMR 155). Here, the synopsis of conduct reports no prior offenses, and the small comment concerning the accused's work by his division officer is not of such nature as to have had

any effect upon the sentence. It is therefore considered to be unnecessary to return this record for possible comment by the accused. . . ."

Both the convening authority and the supervisory authority approved accused's sentence to a bad-conduct discharge. The board of review did not discuss the point.

As far back as United States v Lanford, 6 USCMA 371, 20 CMR 87, in concluding that a board of review might consider matters on the sentence which were before the convening authority, we said, at page 381:

". . . This statement may be included in the post-trial review of the convening authority's legal officer, or in his own action, or even in a separate statement included with the allied papers. Of course, *justice to the accused requires that he be given a fair and reasonable opportunity to rebut or to explain any matter which may be detrimental to him.* In that connection what we said in United States v Long, 5 USCMA 572, 574, 18 CMR 196, is appropriate here:

'. . . If an appellate agency is going to use any post-trial information as a basis for its decision, on jurisdictional matters or in any other permissible areas, each party should be afforded an opportunity to present his, or its, side of the dispute.'" [Emphasis supplied.]

In United States v Griffin, 8 USCMA 206, 24 CMR 16, we were presented with an instance of a staff legal officer referring to accused's testimony as a witness in an unrelated trial which cast his service conduct in a discreditable light. We held, at page 207:

"Unquestionably, it was error for the convening authority to consider, in his deliberations on the sentence, adverse matter from outside the record without affording the accused an opportunity to rebut or explain that matter. United States v Lanford, 6 USCMA 371, 20 CMR 87."

We concluded that the board of re-

view properly cured the error by express reassessment of the sentence in light of the failure to submit the derogatory material to the accused for his comments.

In United States v Vara, 8 USCMA 651, 25 CMR 155, the staff legal officer referred to extra-record information indicating that accused had been found in possession of marihuana while confined in the brig. Again, the comment had not been submitted to the accused for his review and possible rebuttal. Again we reversed, with Judge Latimer speaking thusly for a unanimous Court, at page 653:

". . . Some of the information touching on matters which militate against clemency and the accused's potentialities for rehabilitation is gathered from sources unknown to him. There is nothing of record showing that he was confronted with adverse factual matters, and there is some possibility that had he been afforded an opportunity to meet matters not called to his attention, he might have rebutted them or explained away some of their damaging effects."

See also United States v Payne, 9 USCMA 40, 25 CMR 302 ("evaluation" statements by accused's commander and other persons), and United States v Morris, 9 USCMA 368, 26 CMR 148 ("synopsis of conduct" indicating accused was disrespectful and had been incapacitated for duty from use of alcohol).

Despite the explicit manner in which, as noted above, we have repeatedly set out our determination that the accused be afforded at least an opportunity to explain or rebut unfavorable comments from outside the record, the rule is now reduced to the status of nothing more than a "preferred practice," the application of which to the instant case is held unnecessary because the risk of prejudice is too insubstantial. I believe this departure from a well-recognized and established principle to be totally devoid of merit.

In the first place, the authorities quoted, supra, make it clear beyond

cavil that in each such instance, we did not suggest a practice for military appellate authorities to follow but a rule of fairness which must be applied when a convening authority or his representative desire to go outside the record on matters affecting the sentence. In short, we have, in an unbroken continuum of cases, denied that the convening authority's action or the posttrial review were ex parte proceedings in which the accused had no right to refute estimates of his character and prior behavior which may not have the slightest foundation in fact and amount to no more than an effort by his immediate superiors to persuade an impartial judicial officer to rid them of his continued presence. In short, as we said in Lanford, supra, "justice to the accused requires that he be given a fair and reasonable opportunity to rebut or to explain any matter which may be detrimental to him."

In the second place, there can be no doubt that the "synopsis" in this instance contains adverse comments likely to have had a substantial impact on any convening authority. Accused's service is said to have shown a progressive decline in interest until he completely lacked any further motivation to perform his duty or to "strike" for the rating of storekeeper. Indeed, his work was so slovenly that his enlisted superiors "were constantly having to correct jobs that he did," and he was "recently" reassigned to the "deck forces," there, apparently, to suffer the life and perform the duties of an ordinary unskilled seaman. One could hardly ask for a more succinct description of an individual without further value to the naval service and, given such information, it does not require the dark power of divination to predict that a convening authority, responsible for the well-being and discipline of his ship, would forthwith approve a sentence to bad-conduct discharge in order to rid the command of this accused. Yet, despite the importance of such considerations, the accused was arbitrarily denied any opportunity to explain his alleged derelictions, to refute them, or to point out—as, for ought we know, may well have been the case—

that his performance of duty was in fact superior and that those to whom he was more directly responsible would so attest.

Nor may reliance for this affirmance be correctly based upon this Court's decisions in United States v Sarlouis, 9 USCMA 148, 25 CMR 410, and United States v Taylor, 9 USCMA 34, 25 CMR 296. In the latter case, a majority found from a "careful reading of the staff judge advocate's review . . . that reference to the accused's reputation for using a straight razor was merely incidental" when it otherwise appeared that he had been convicted of assaulting someone with such a weapon, had a civilian conviction for violating a state firearms act, was neither repentant nor remorseful, and displayed a wholly indifferent attitude toward possible rehabilitation. In the former case, the staff judge advocate's review was found not to depend in any respect upon the matter which was withheld from accused. Moreover, there is more than a little intimation that the adverse comments of accused's superiors in that case were limited to purely personal opinions to which he might offer little or no challenge. Indeed, in light of the information here presented, our observation in the Sarlouis case concerning the use of such opinions is extremely pertinent:

". . . Frequently, however, the impression or recommendation is fortified by the 'facts' upon which it is based. . . . *If these facts are derogatory, the accused must be accorded an opportunity to meet them. United States v Vara,* supra."

[Emphasis supplied.] [United States v Sarlouis, supra, at page 150.]

That is precisely the case before us, for accused's slovenliness, declining interest, lack of motivation, his transfer, and the implied reasons therefor, are facts, not opinions, and of a nature clearly susceptible of being explained or rebutted.

In sum, then, I believe that, in order to follow the definite doctrine which we set forth in United States v Griffin, and United States v Vara, both supra, we should set aside the action of the convening authority and return the case to this initial appellate level in order to permit the accused a fair and reasonable opportunity to rebut or explain the information contained in Lieutenant Long's "synopsis." It is here that the military defendant has his best chance to obtain clemency and when, as in this case, he is not given the opportunity to defend himself against post-trial allegations designed to steel the heart of the most liberal commander against him, the door is opened to the most vicious sort of *ex parte* practices. In good conscience, I cannot join in my brothers' *sub silentio* denunciation of a heretofore well-settled principle.

I would reverse the decision of the board of review and order the record of trial returned to the convening authority for a new action upon the sentence after according to the accused the right to be heard concerning the reflections cast by his superior officer upon the character of his service.