UNITED STATES, Appellee,

v.

Private E1 Jarrod M. BAUERBACH,
United States Army, Appellant.

ARMY 9900287.

U.S. Army Court of Criminal Appeals.

15 May 2001.

For Appellant: Colonel Adele H. Odegard, JA; Lieutenant Colonel David A. Mayfield, JA; Major Jonathan F. Potter, JA; Captain Kevin J. Mikolashek, JA (on brief).

For Appellee: Colonel David L. Hayden, JA; Lieutenant Colonel Edith M. Rob, JA; Major Daniel G. Brookhart, JA; Captain William J. Nelson, JA (on brief).

Before TOOMEY, Senior Judge, CARTER, and HARVEY, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A military judge convicted appellant, pursuant to his pleas, of one specification of wrongful use of marijuana (on five or six occasions during a three-month period), in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ]. On 23 March 1999, a panel of officer and enlisted members sitting as a general court-martial acquitted appellant of one specification of distribution of marijuana and sentenced him to a bad-conduct discharge, confinement for three months, and forfeiture of all pay and allowances. On 5 January 2000, the convening authority approved the adjudged sentence.

■ In his sole assignment of error in this Article 66, UCMJ, 10 U.S.C. § 866, appeal, appellant asserts that 288 days of post-trial processing for this 385–page record of trial warrants relief under *United States v. Collazo*, 53 M.J. 721 (Army Ct.Crim.App.2000). The government replies that, unlike *Collazo*,

appellant has made no colorable showing of prejudice which would entitle him to relief. The government's brief concludes by stating, "While appellant asks this Court to stretch the holding in *Collazo* to mean that Article 59, UCMJ, 10 U.S.C. § 859,[1] does not apply to post-trial delay cases, such an endeavor would clearly be beyond the jurisdiction of this Court."[2] The government's position suggests a misunderstanding of this court's responsibility and authority to determine sentence appropriateness under Article 66(c), UCMJ. For the reasons discussed herein, we hold that Article 59(a), UCMJ, does not limit this court's responsibility under Article 66(c), UCMJ, to "affirm only . . . such part or amount of the sentence, as it . . . determines, *on the basis of the entire record, should be approved.*" UCMJ art. 66(c) (emphasis added).

## Historical Impetus for Article 66, UCMJ [3]

To understand the Service Courts of Criminal Appeals' unique Article 66, UCMJ, responsibilities, it is helpful to have some historical background about their enactment. Up until World War I, commanders and the public felt that the disciplining of troops was primarily commanders' business, because a commander who could be trusted to take his troops into combat could also be trusted to treat them fairly in courts-martial. Two controversial courts-martial in 1917 changed that attitude.

First, in October 1917, a number of noncommissioned officers (NCOs) who were under arrest for minor infractions at Fort Bliss,

---

1. "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." UCMJ art. 59(a).

2. *See also*, Major Timothy C. MacDonnell, *United States v. Collazo: The Army Court of Criminal Appeals Puts Steel on the Target of Post–Trial Delay*, Army Law., Nov. 2000, at 38 [hereinafter MacDonnell] (quoting Article 59(a), UCMJ, and concluding that "[a]rguably, the Army Court acted beyond the scope of its authority by granting relief to an accused where no prejudice was found"); *United States v. Tardif*, 54 M.J. 827 (C.G.Ct.Crim.App.2001) (rejecting *Collazo* and holding, in a split decision, that an appellant

must show prejudice to his substantial rights before relief will be granted for unreasonable post-trial processing delays), *reconsidered on other grounds*, 54 M.J. 954 (C.G.Ct.Crim.App.2001). *But see United States v. Williams*, 42 M.J. 791, 793–94 (N.M.Ct.Crim.App.1995) (reducing sentence, without a specific finding of prejudice, for untimely post-trial processing at the appellate level).

3. The information in this section is abstracted from *The Army Lawyer: A History of The Judge Advocate General's Corps, 1775–1975*, at 123–217 (1975). These pages provide a detailed history of the bitter battles and various reform efforts from 1917 to the enactment of the UCMJ in 1950.

Texas, refused to attend a drill formation because an Army Regulation provided that NCOs under arrest should not attend drill. Of the fourteen soldiers court-martialed in these "Texas Mutiny" cases, ten were found guilty and sentenced to dishonorable discharges and confinement for various terms ranging from three to seven years. As a result of action initiated by The Judge Advocate General and the Inspector General, the ten convicted soldiers were restored to duty on 5 January 1918 without loss of pay.[4]

Second, in the summer of 1917 there were a number of escalating racial confrontations in Houston, Texas, between black soldiers and white citizens of the local community, which culminated in a riot by the black soldiers during which fifteen local citizens were killed. In November and December 1917, sixty-three black soldiers were court-martialed in one mass trial at Fort Sam Houston, Texas, for mutiny and murder. Of the fifty-eight soldiers who were convicted, forty-one were sentenced to life imprisonment and thirteen were sentenced to death. The thirteen soldiers sentenced to death were hanged the next morning in a mass execution.

The results in the "Texas Mutiny" and the "Houston Riot" cases, including the execution of thirteen death sentences the day after trial, were procedurally consistent with the Articles of War then in effect. *See* Article of War 48, Act of Aug. 29, 1916, Pub.L. No. 64–242, 39 Stat. 619, 658, *reprinted in Manual for Courts–Martial, United States* (1917 ed.), at 316 [hereinafter MCM, 1917]. As a consequence of these two notorious cases, the Secretary of War established advisory Boards of Review in January 1918, which were codified in the Articles of War in 1920. *See* Article of War 50½, Act of June 4, 1920, Pub.L. No. 66–242, 41 Stat. 759, 797–99, *reprinted in* MCM, 1920, at 512–15. These Boards of Review are the progenitors of the modern-day Service Courts of Criminal Appeals.

During and after World War II, Senators and Representatives were flooded with complaints from the families of servicemembers who had never been in trouble with the law in civilian life, but who spent time in military prisons and came home with court-martial convictions. The central issue during subsequent reform proceedings was how to blunt public criticism that commanders exercised too much control over court-martial procedures and results. The Uniform Code of Military Justice, enacted in 1950, was Congress' evolutionary response to public demands for increased procedural due process in military justice that began with the "Texas Mutiny" and "Houston Riot" cases of 1917.

### The Interplay Between Article 66 and Article 59, UCMJ

When Congress enacted the Uniform Code of Military Justice, it granted precise and independent responsibilities over military justice to the President, the Service Secretaries, the Judge Advocates General, the newly created United States Court of Military Appeals, the Service Boards of Review,[5] and convening authorities. This court's Article 66, UCMJ, charter of jurisdiction is narrowly circumscribed. *See generally Clinton v. Goldsmith*, 526 U.S. 529, 535, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). First, we may act on cases referred to us by our Judge Advocate General, in accordance with the requirements of Article 66(b), UCMJ, and the rules of procedure prescribed by the President under Article 36, UCMJ, 10 U.S.C. § 836.[6] *See* UCMJ art. 66(b) and (c); Rule for Courts–Martial [hereinafter R.C.M.] 1201 and 1203. Second, our jurisdiction to act is limited to the findings and sentence as approved by the convening authority. UCMJ art. 60, 10 U.S.C. § 860 and 66(c).

4. *See* Frederick B. Wiener, *The Seamy Side of the World War I Court–Martial Controversy,* 123 Mil. L.Rev. 109, 112–15 (1989).

5. The Boards of Review were renamed Courts of Military Review in 1968. *See* Military Justice Act of 1968, Pub.L. No. 90–632, § 866, 82 Stat. 1335, 1342 (1968). In 1994, the Courts of Military Review were renamed Courts of Criminal Appeals and the United States Court of Military Appeals was renamed the United States Court of Appeals for the Armed Forces. *See* Nat'l Def. Authorization Act for Fiscal Year 1995, Pub.L. No. 103–337, § 924(a), 108 Stat. 2663, 2831 (1994).

6. When The Judge Advocate General refers a court-martial to our court pursuant to his Article 69(d), UCMJ, 10 U.S.C. § 869(d), discretionary authority, our review is limited to "matters of law." UCMJ art. 69(e).

For those cases that fall within our limited Article 66, UCMJ, jurisdiction, our statutory responsibility is one of the broadest and most unusual of any criminal appellate court in this country. *See United States v. Sothen,* 54 M.J. 294, 296 (2001); *United States v. Lacy,* 50 M.J. 286, 287–88 (1999). Article 66, UCMJ, provides that this court:

> may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

UCMJ art. 66(c). Other than twice changing the name of our tribunal, Congress has not altered the language of Article 66(c) since its enactment in 1950.

The three components of our Article 66(c), UCMJ, authority are commonly referred to as legal sufficiency ("correct in law"), factual sufficiency ("correct in ... fact"), and sentence appropriateness ("may affirm only ... such part or amount of the sentence, as it ... determines, on the basis of the entire record, should be approved"). Our appellate review authority is broader than that of our superior court, which is limited to legal sufficiency. *See* UCMJ art. 67(c), 10 U.S.C. § 867(c);[7] *Lacy,* 50 M.J. at 288; *United States v. Claxton,* 32 M.J. 159, 162 (C.M.A. 1991).

Article 59(a), UCMJ, upon which the government argument relies, provides that "[a] finding or sentence of [a] court-martial may not be held incorrect *on the ground of an error of law* unless the error materially prejudices the substantial rights of the accused." (Emphasis added). Without question, Article 59(a), UCMJ, limits our Article 66, UCMJ, authority to reverse any finding or sentence *on the basis of any error of law. See United States v. Powell,* 49 M.J. 460, 464 (1998).

Our decisions on legal sufficiency (i.e., matters that are "incorrect on the ground of an error of law") are subject to review by our superior court. UCMJ art. 59(a), 66(c), and 67(c).

Our Article 66, UCMJ, authority to review for factual sufficiency and sentence appropriateness exists separately and independently from our legal sufficiency authority.

> This awesome, plenary, *de novo* power of review grants unto the [Court of Criminal Appeals] authority to, indeed, "substitute its judgment" for that of the military judge. It also allows a "substitution of judgment" for that of the court members. In point of fact, Article 66 requires the [Court of Criminal Appeals] to use its judgment to "determine[ ], on the basis of the entire record" which findings and sentence should be approved.

*United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990) (emphasis and third alteration in original) (quoting UCMJ art. 66(c)). "A clearer *carte blanche* to do justice would be difficult to express." *Claxton,* 32 M.J. at 162.

For nearly fifty years, our superior court has consistently interpreted our sentence appropriateness responsibility as a sweeping Congressional mandate to ensure "a fair and just punishment for every accused." *United States v. Lanford,* 6 U.S.C.M.A. 371, 378, 20 C.M.R. 87, 94, 1955 WL 3541 (1955). Under Article 66(c), UCMJ, we "can, in the interests of justice, substantially lessen the rigor of a legal sentence." *Id.* We have the power of the "proverbial 800–pound gorilla when it comes to [our] ability to protect an accused." *United States v. Parker,* 36 M.J. 269, 271 (C.M.A.1993).

While the plain language of Article 59(a), UCMJ, clearly restricts our authority to hold a finding or a sentence "incorrect on the ground of an error of law" (legal sufficiency) to those legal errors which are materially prejudicial, it just as clearly does not address, nor in anyway restrict, our responsibil-

---

7. Under Article 67(c), UCMJ, the United States Court of Appeals for the Armed Forces:
   act[s] only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as *incorrect in*
   *law* by the Court of Criminal Appeals.... The Court of Appeals for the Armed Forces shall take action only with respect to *matters of law.* (Emphasis added.)

ity under Article 66(c), UCMJ, to affirm only those findings of guilty we find "correct in . . . fact" (factual sufficiency) and to affirm only that part of the sentence that we determine "should be approved" (sentence appropriateness). In simple terms, Article 59(a), UCMJ, only limits our authority to reverse any finding or sentence *on the ground of any error of law,* while our factual sufficiency and sentence appropriateness responsibilities under Article 66(c), UCMJ, constrain our authority to affirm. *See Powell,* 49 M.J. at 464.

A convening authority has absolute discretion to disapprove findings of guilty or all or a part of an adjudged sentence. UCMJ art. 60(c); *Lacy,* 50 M.J. at 287. A convening authority's decision granting such relief is not subject to review by this court or our superior court. UCMJ art. 66(c) and 67(c) (limiting the scope of our review and review by our superior court to the findings and sentence "as approved by the convening authority"). Similarly, any *relief* that we grant an appellant exercising our factual sufficiency or sentence appropriateness responsibilities is final. *See United States v. Dukes,* 5 M.J. 71, 72–73 (C.M.A.1978); *United States v. Maze,* 21 U.S.C.M.A. 260, 262, 45 C.M.R. 34, 36, 1972 WL 14113 (1972); *United States v. Turner,* 15 U.S.C.M.A. 438, 439, 35 C.M.R. 410, 411, 1965 WL 4698 (1965); *United States v. Christopher,* 13 U.S.C.M.A. 231, 234–36, 32 C.M.R. 231, 234–36, 1962 WL 4483 (1962); *United States v. Higbie,* 12 U.S.C.M.A. 298, 300, 30 C.M.R. 298, 300, 1961 WL 4441 (1961). Any sentence that we *affirm* under our "highly discretionary power" to determine sentence appropriateness, however, is subject to legal review by our superior court for obvious miscarriages of justice or clear abuses of discretion that demonstrate such an abrogation of our Article 66, UCMJ, sentence appropriateness responsibility as to constitute an error of law that materially prejudices the substantial rights of an accused. *See* UCMJ art. 59(a); *Sothen,* 54 M.J. at 296; *Lacy,* 50 M.J. at 287–88; *Dukes,* 5 M.J. at 73; *Christopher,* 32 C.M.R. at 234–37.

In 1957, the United States Supreme Court issued two companion decisions that expressly rejected numerous legal challenges to our

sentence appropriateness responsibility and concluded that it was not for the Court "to question the judgment of the Congress in selecting the process it chose." *Jackson v. Taylor,* 353 U.S. 569, 580, 77 S.Ct. 1027, 1 L.Ed.2d 1045 (1957); *see also Fowler v. Wilkinson,* 353 U.S. 583, 584, 77 S.Ct. 1035, 1 L.Ed.2d 1054 (1957). The Court noted that Congress first granted sentence appropriateness responsibility to the Boards of Review with the enactment of the UCMJ in 1950, over the objection of military officials who "opposed giving the review boards power to alter sentences." *Jackson,* 353 U.S. at 575–77, 77 S.Ct. 1027. The Court also noted that the legislative history of Article 66(c), UCMJ, clearly indicated a Congressional intent for a board of review to affirm only so much of the sentence as it found to be "justified by the whole record" and to set aside any part of a sentence *"either* because it is illegal *or* because it is inappropriate." *Id.* at 576–77, 77 S.Ct. 1027 (emphasis added) (citations omitted). *See also United States v. Cavallaro,* 3 U.S.C.M.A. 653, 655, 14 C.M.R. 71, 73, 1954 WL 2093 (1954); *United States v. Simmons,* 6 C.M.R. 105, 106, 1952 WL 2285 (C.M.A. 1952). The government's interpretation of Article 59(a), UCMJ, would limit our sentence appropriateness authority to situations involving a prejudicial error of law and would undermine our authority to reduce sentences that we found to be legal but inappropriate. Such an interpretation is contrary to the intent of Congress as explained by the Supreme Court.

Relief is *required* under Article 59(a), UCMJ, when dilatory post-trial processing, that constitutes an error of law, materially prejudices the substantial legal rights of an accused. *See United States v. Hudson,* 46 M.J. 226, 227 (1997); *United States v. Bell,* 46 M.J. 351, 353 (1997); *United States v. Jenkins,* 38 M.J. 287, 288–89 (C.M.A.1993); *United States v. Bruton,* 18 M.J. 156, 157 (C.M.A.1984); *United States v. Shely,* 16 M.J. 431, 432–33 (C.M.A.1983); *United States v. Sutton,* 15 M.J. 235, 236 (C.M.A. 1983); *United States v. Clevidence,* 14 M.J. 17, 19 (C.M.A.1982); *United States v. Banks,* 7 M.J. 92, 93 (C.M.A.1979). None of these cases states or implies that this court may

not exercise its "highly discretionary power" to grant sentence relief under Article 66(c), UCMJ, in cases where there is no material prejudice or error of law. *See Lacy,* 50 M.J. at 287–88.

In summary, Congress granted this court sentence appropriateness responsibility because it wanted a judicial body to review all approved sentences which include a punitive discharge or confinement for a year or more, even when no legal error was committed, as a procedural safeguard against inappropriately severe sentences. Accordingly, the UCMJ requires that the members of this court independently determine, in every case within our limited Article 66, UCMJ, jurisdiction, the sentence appropriateness of each case we affirm. While each member of this court takes great care not to abuse this awesome power, it would be an abrogation of our sentence appropriateness responsibility to disregard the timeliness, or lack thereof, of the post-trial processing of a soldier's court-martial record in our consideration of sentence appropriateness.

### United States v. Collazo

■ In *Collazo,* our court adopted a totality of the circumstances test to determine whether fundamental fairness warranted sentence relief for unreasonable post-trial processing. *Collazo,* 53 M.J. at 727. This standard has been criticized because "it is hard to know what will warrant relief."[8] There is no precise yardstick for measuring sentence appropriateness determinations. Determining whether post-trial delay warrants relief under *Collazo* is no more or no less difficult than determining how much relief is warranted in any other case with sentence appropriateness issues. Notwithstanding the lack of a mathematical formula, there are several principles that are helpful to the fair resolution of unreasonable post-trial processing delays.

First, post-trial processing must support the purpose of military law. "The purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States." MCM, 2000, Part I, para. 3. The Army, the chain of command, each victim, every person who knows about an offense, and most of all the accused, has an interest in the timely completion of courts-martial, to include the post-trial process. Every accused soldier has friends and family members (to include other soldiers) who may carefully monitor each phase of the court-martial of that accused soldier. Not only is untimely post-trial processing unfair to the soldier concerned, but it also damages the confidence of both soldiers and the public in the fairness of military justice; thereby directly undermining the very purpose of military law. *See generally. Williams,* 42 M.J. at 794 (stating that Article 98, UCMJ, 10 U.S.C. § 898, shows a strong Congressional intent in favor of expeditious post-trial processing).

Second, staff judge advocates have "been elevated to that responsibility because of [their] sound judgment and proven professional competence." *United States v. Kema,* 10 U.S.C.M.A. 272, 274, 27 C.M.R. 346, 348, 1959 WL 3626 (1959). When preparing post-trial recommendations, staff judge advocates apply their legal knowledge and military experience to "determine whether the accused has been denied military due process." *Id.* Staff judge advocates enhance military due process and fundamental fairness by ensuring "that the government proceed[s] with due diligence to execute a soldier's regulatory and statutory post-trial processing rights and to secure the convening authority's action as expeditiously as possible, given the totality of the circumstances in that soldier's case." *Collazo,* 53 M.J. at 727.

Third, staff judge advocates and convening authorities have primary responsibility for taking corrective action for unreasonable post-trial delays. Staff judge advocates are in the best position to investigate and deter-

---

8. MacDonnell, *supra* at 38. On 14 August 2000, the government filed a motion asking this court to reconsider the *Collazo* decision en banc, complaining that the *Collazo* decision provided "no guidance for avoiding the problem it purports to address." Although we denied the government's motion by order dated 22 August 2000, we will take this opportunity to provide some general principles for applying *Collazo.*

mine whether the time from trial to action in a particular case is so unreasonable as to warrant some relief by the convening authority. The now discarded *Dunlap*[9] rule drew a bright-line between reasonable and unreasonable post-trial processing, when an accused was under continuous restraint from trial to action, at ninety days. Under *Collazo*, staff judge advocates must independently evaluate each case, including any specific request for relief from an accused's defense counsel under R.C.M. 1105, to determine what relief may be warranted. When no relief is given in spite of apparent excessive post-trial delay, the staff judge advocate's recommendation or addendum should explain any unusual circumstances for the otherwise untimely action in that particular case. The convening authority would normally moot the need for additional relief by this court by granting relief for untimely post-trial processing in his action.[10] *See Collazo*, 53 M.J. at 725 n. 2; *United States v. Benton*, ARMY 9701402, slip op. at 1 n.1 (Army Ct.Crim.App. 10 Aug. 2000) (unpub.) (noting no *Collazo* relief required by this court after convening authority reduced confinement from three years to thirty months in response to trial defense counsel's complaint about the 244–day delay from the end of trial to the defense counsel's examination of the 534–page record).

Finally, our sentence appropriateness responsibility "involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). Clemency, which involves granting mercy and "treating an accused with less rigor than he deserves," is not part of our sentence appropriateness responsibility. *Id.* Dilatory post-trial processing, without an acceptable explanation, is a denial of fundamental military justice, not a question of clemency. Intervention by this court is necessary only when the convening authority fails to grant relief in his action or the staff judge advocate fails to document an acceptable explanation for the untimely post-trial processing.[11] Acceptable explanations may include excessive defense delays in the submission of R.C.M. 1105 matters, post-trial absence or mental illness of the accused, exceptionally heavy military justice post-trial workload, or unavoidable delays as a result of operational deployments. Generally, routine court reporter problems are not an acceptable explanation. *See Clevidence*, 14 M.J. at 19.

In appellant's case, we find that 288 days from trial to action for a 385–page record of trial is unreasonable. There is nothing in the record or allied papers that attempts to justify this delay. Considering the record as a whole and the totality of the circumstances surrounding appellant's case, we will grant appellant one month of confinement relief in our decretal paragraph. UCMJ art. 66(c); *Collazo*, 53 M.J. at 727.

---

9. *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751, 1974 WL 13908 (1974). *See Collazo*, 53 M.J. at 725 n. 3, for a short discussion of the *Dunlap* rule.

10. To distinguish *Collazo* relief from other reasons the convening authority might have granted relief, staff judge advocates should document in their post-trial recommendations, or in a separate memorandum for record attached to the allied papers, that portion of the convening authority's relief that was granted to compensate for untimely post-trial processing.

11. To date, we have granted *Collazo* relief in five cases since *Collazo* was published on 27 July 2000. *See United States v. Hernandez*, ARMY 9900776 (Army Ct.Crim.App. 23 Feb. 2001) (unpub.) (reducing six months confinement and forfeitures to one month confinement and forfeitures when action on a ninety-eight page record took almost one year after trial); *United States v. Fussell*, ARMY 9801022 (Army Ct.Crim.App. 20 Oct. 2000) (unpub.) (reducing twenty months confinement and total forfeitures to eighteen months confinement and total forfeitures for fourteen months for 242–day delay to prepare a 133–page record); *United States v. Marlow*, ARMY 9800727 (Army Ct.Crim.App. 31 Aug. 2000) (unpub.) (reducing eighteen months confinement to fifteen months for 330–day delay between trial and action on a 168–page record); *United States v. Sharp*, ARMY 9701883 (Army Ct.Crim.App. 16 Apr. 2001) (unpub.) (reducing twenty years confinement by six months for 399–day delay from trial to authentication and an additional ninety-nine day delay to action on a 655–page record); *United States v. Acosta-Rondon*, Army 9900458 (Army Ct.Crim.App. 30 Apr. 2001) (unpub.) (reducing thirty days of confinement by ten days for nine month-delay from trial to action on a 225–page record).

### Decision

The findings of guilty are affirmed. After considering the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for two months, and forfeiture of all pay and allowances.

Senior Judge TOOMEY and Judge HARVEY concur.