# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Kerry M. SCOTT
## Yeoman Second Class (E-5), U.S. Coast Guard

## CGCMS 24430

## Docket No. 1336

## 9 August 2011

Special Court-Martial convened by Commander, Coast Guard Training Center Petaluma. Tried at Alameda, California, on 1 September 2009. Post-trial hearing held at Miami, Florida, on 26 May 2011.

| | |
|---|---|
| Military Judge at trial: | CDR Benes Z. Aldana, USCG |
| Military Judge at post-trial hearing: | CAPT Michael E. Tousley, USCG |
| Trial Counsel at trial: | LT Jowcol I. Viña, USCGR |
| Defense Counsel at trial: | LT Benjamin B. Garcia, JAGC, USN |
| Assistant Defense Counsel at trial: | LCDR Sean C. Fahey, USCG |
| Trial Counsel at post-trial hearing: | LT Tamara S. Wallen, USCGR |
| Assistant Trial Counsel at post-trial hearing: | LT Grace E. Oh, USCGR |
| Defense Counsel at post-trial hearing: | LCDR Fair C. Kim, USCG |
| Appellate Defense Counsel: | LT Shadrack L. Scheirman, USCG |
| | LCDR Paul R. Casey, USCG |
| Appellate Government Counsel: | CAPT Stephen P. McCleary, USCG |
| | LT Herbert C. Pell, USCGR |
| | LT Jonathan D. Shumate, USCGR |

## BEFORE
## McCLELLAND, LODGE & JOHNSON
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to her pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of larceny, in violation of Article 121, Uniform Code of Military Justice (UCMJ).

The military judge sentenced Appellant to confinement for one month, reduction to E-3, and a bad-conduct discharge. The Convening Authority approved the sentence as adjudged.

Before this court, Appellant has assigned the following errors:

I.      The Government is bound by Appellant's detrimental reliance on the pretrial agreement to suspend the bad-conduct discharge.

II.     The military judge erred in addressing a premature disclosure of the terms of the sentencing portion of the pretrial agreement and the associated failure of a material condition.

III.    The pretrial agreement as administered violates fundamental notions of fairness.

This Court specified an additional issue and ordered briefs thereon: Whether Appellant received ineffective assistance of counsel when she made restitution in the amount required by her pretrial agreement, but missed the deadline for restitution by four days, where restitution by the deadline was a precondition to a major protection of her pretrial agreement, and thereafter pleaded guilty before a judge alone without that protection or any further Government concession ("specified issue").

Appellant filed a brief as required by our order, asserting this issue: Appellant was denied effective assistance of counsel when her attorneys failed to properly advise her as to the impact of her pending court-martial on the end of her enlistment and her ability to withdraw from the pretrial agreement without making restitution. The brief was supported by Appellant's affidavit. We call this Appellant's fourth issue.

Following receipt of Appellant's brief, the Government's Answer and Brief supported by affidavits from the two trial defense counsel, and Appellant's Reply brief, we ordered a post-trial hearing in accordance with *United States v. DuBay*, 17 USCMA 147, 37 C.M.R. 411 (1967). A post-trial hearing was duly held, and the military judge at the hearing made findings of fact, which are found at Post-trial Appellate Exhibit XVI.

Appellant now asserts that we should disapprove her bad-conduct discharge because the Government was ultimately responsible for delays in restitution. We call this Appellant's fifth issue.

We briefly discuss the first, fourth and fifth issues, summarily reject the second and third issues, and discuss the specified issue. We affirm.

## Basic Facts

Appellant was a designated cashier's agent at her permanent duty station. In December 2007, she stole $3,000 in traveler's checks from the safe in the cashier's cage. Eventually an investigation revealed the crime, and a charge was preferred against her in June 2009. (Stipulation of Fact, Prosecution Ex. 1; Charge sheet.)

Appellant entered into a pretrial agreement, under which she would plead guilty before a judge alone, and the Convening Authority would suspend confinement in excess of thirty days, and would also suspend any punitive discharge if she made restitution by 21 August 2009. (Appellate Exs. VI and VIII.) In the event, she did not make restitution by the required date, because the money was located in two different financial institutions, and when she sought to transfer money electronically, the process took several days instead of a single day as she expected. (Clemency submission dated 14 September 2009; Second Clemency Request dated 28 December 2009; Appellant's affidavit dated 8 February 2011, App. A to Appellant's supplemental brief dated 8 February 2011; LT Garcia's Email dated 21 August 2009, App. B to Appellant's supplemental brief dated 8 February 2011.) Counsel inquired of the Government as to whether flexibility might be granted on the deadline, and received a negative response. (LT Garcia's Email dated 21 August 2009, App. B to Appellant's supplemental brief dated 8 February 2011; LT Garcia's affidavit dated 28 February 2011, App. B to Government's supplemental brief dated 8 March 2011.) Counsel advised Appellant to make restitution anyway, and she did so. (Post-trial R. at 52-53; LT Garcia's affidavit dated 28 February 2011, App. B to Government's supplemental brief dated 8 March 2011; Appellant's affidavit dated 8 February 2011, App. A to Appellant's supplemental brief dated 8 February 2011.)

Thereafter, despite knowing that the pretrial agreement's protection concerning a punitive discharge was unavailable, Appellant requested trial by judge alone and pleaded guilty, in accordance with the pretrial agreement. The clemency request for suspension of the bad-conduct discharge was denied.

### Appellant's reliance on pretrial agreement

Appellant acknowledges that her restitution payment was made four days after the date required by the pretrial agreement in order to receive suspension of the bad-conduct discharge. However, she argues that she had taken irreversible steps after the pretrial agreement was signed, which should estop the Convening Authority from ordering the bad-conduct discharge executed. She cites *Shepardson v. Roberts*, 14 M.J. 354 (C.M.A. 1983) in support of her argument.

In *Shepardson v. Roberts*, the Government withdrew from a pretrial agreement a few days after entering into it, several days before arraignment. The opinion declares that any action taken by an accused in reliance on a pretrial agreement that makes it significantly more difficult for the accused to contest guilt on a plea of not guilty constitutes detrimental reliance that will compel the Government to abide by the pretrial agreement. *Id.* at 358.

In our case, the Government has not sought to withdraw from the pretrial agreement. Rather, Appellant failed to abide by a term of the pretrial agreement, in that she failed to make restitution by the specified date. The consequences of that failure can be precisely determined within the terms of the pretrial agreement. That is, the Convening Authority's promise to suspend the bad-conduct discharge is conditioned on receipt of restitution by the specified date, and therefore upon her failure to make restitution by the specified date, the Convening Authority was entitled to approve the bad-conduct discharge without suspending it. Regardless of any actions Appellant took in reliance on the pretrial agreement, she had no right to hold the Government to an obligation in the agreement that she herself had breached.[1] An accused is not entitled to unilaterally amend a pretrial agreement. Appellant's first assignment is rejected.

---

[1] The actions asserted to have been irreversible were not, in fact, irreversible in any meaningful sense, and certainly did not make it more difficult for her to contest guilt.

**Ineffective assistance of counsel: end of enlistment**

Appellant claimed, in an affidavit dated 8 February 2011, that she felt confused and rushed before trial because her attorneys did not answer her questions about what would happen at the end of her enlistment with the court-martial pending. (App. A to Brief on Behalf of Appellant in Response to Specification of Additional Issue, dated 8 February 2011.)[2] However, on 12 August 2009, she had signed an agreement to extend her enlistment to 3 September 2010. (Post-trial Appellate Ex.XI;[3] Finding of Fact 1b, Post-trial Appellate Ex. XVI at 3; see also R. at 9-10.) She signed the pretrial agreement the next day, 13 August 2009. (Trial Appellate Exhibits VII, X; Finding of Fact h, Post-trial Appellate Ex. XVI at 2.) The military judge found that Appellant's concern that she was rushed was factually baseless and her affidavit was erroneous. (Finding of Fact 1d, Post-trial Appellate Ex. XVI at 3.) In view of this finding, which is not clearly erroneous, we reject Appellant's fourth issue.

**Government's responsibility for delay in restitution**

Appellant argues that her delay in making restitution, which vitiated the pretrial agreement's protection against a bad-conduct discharge, resulted from the Government's impractical requirement to make restitution in the form of a money order and from the Government's delay in obtaining the Convening Authority's signature on the pretrial agreement. Therefore, she argues, we should restore the protection by disapproving the bad-conduct discharge.

> Appellant's argument relies on these findings of fact by the military judge:
>
> g. The PTA's requirement to use a money order was impractical because banks render cashier's checks rather than money orders. This format requirement and SeaWest Credit Union's procedural delay in conducting an electronic transfer created a four-day delay in delivering the funds. . . .
>
> h. Appellant signed the PTA on 13 August, at that time trial defense counsel directed the Appellant to get the funds together to meet the terms of the restitution provision, and then to transfer of funds on 17 August 2009 when the convening authority signed the PTA. The Government was also responsible for this four-day delay. On 18 August, Appellant indicated that she had the funds and would meet the deadline.

---

[2] The affidavit is also Post-trial Appellate Exhibit X.
[3] The extension agreement is also Prosecution Exhibit 3.

(Post-trial Appellate Exhibit XVI at 2.)

The notion that the requirement for a money order contributed to a delay is unsupported. Appellant testified that when she sought a money order from her bank, the bank said they could not do a money order for the requested $3,000 but they could do a cashier's check; there was no indication that this caused a delay. (Post-trial R. at 57-58, 64.) We disregard this part of the military judge's findings of fact.

The statement in finding of fact h, "The Government was also responsible for this four-day delay," is ambiguous. To the extent that it means the PTA was in the hands of the Government for the four days between Appellant's signature and the Convening Authority's signature, it is not clearly erroneous and we accept it as a finding of fact. If it means the Government is legally responsible for Appellant waiting until 17 August 2009 to transfer funds for restitution,[4] it is not a finding of fact but a legal conclusion. As the military judge had no reason to draw such a legal conclusion in the post-trial hearing he conducted pursuant to our order, we give the statement only the former interpretation.[5]

If the military judge did not ascribe legal responsibility to the Government for the delay in restitution, Appellant invites us to do so, saying the Convening Authority's four-day delay in signing the pretrial agreement was a "causal factor . . . hampering" her ability to meet the deadline, and "but for the convening authority's delay in signing the agreement, Appellant's restitution would have been presented by 21 August 2009 . . ." We decline the invitation. The Government did nothing to prevent Appellant from starting the process of obtaining a financial instrument that would meet the restitution requirement. Appellant did not need to wait to begin that process until she knew the Convening Authority had signed the pretrial agreement. It may be understandable that she waited; it may have been reasonable in some sense for her to expect she could accomplish the task in the time remaining. But this does not shift the responsibility for the delay from her to the Government.

---

[4] Appellant testified that she began putting resources in motion to make restitution on 17 August 2009, although she knew about a week earlier that she was going to do so. (Post-trial R. at 44-45, 49.)
[5] If we gave it the latter interpretation, we would review it *de novo*.

Appellant's argument can also be taken as an appeal to this Court's Article 66(c), UCMJ, power. According to that provision defining our authority, we may affirm only the amount of sentence as we find correct in law and fact and we determine, on the basis of the entire record, should be approved (emphasis added). Without calling the Government legally responsible for the delay, we could relieve her of the consequences of her timing choice by granting relief if, because of the circumstances found in the entire record, we decided we should do so. After careful consideration, we have decided otherwise.

We have also considered the position of our dissenting colleague, who opines that the military judge should have asked more questions concerning the restitution provision in order to properly assess the fundamental fairness of the pretrial agreement. We disagree that the military judge was required to conduct more of an inquiry than he did into the pretrial agreement.

### Ineffective assistance of counsel (specified issue)

As noted at the beginning of this opinion, we specified this issue: Whether Appellant received ineffective assistance of counsel when she made restitution in the amount required by her pretrial agreement, but missed the deadline for restitution by four days, where restitution by the deadline was a precondition to a major protection of her pretrial agreement, and thereafter pleaded guilty before a judge alone without that protection or any further Government concession. Although counsel has not presented any argument on the specified issue, we will discuss it.

The test for resolving an issue of ineffective assistance of counsel was established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and was incorporated into military law by *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987); s*ee also United States v. Caldwell*, 48 M.J. 834, 835 (C.G.Ct.Crim.App. 1998). "First, Appellant must show that counsel's errors were so serious that he was not functioning as the counsel guaranteed by the Constitution's Sixth Amendment. Next, Appellant must demonstrate that counsel's deficient performance resulted in prejudice, which deprived him of a fair trial, that is, one whose result is reliable." *Caldwell*, 48 M.J. at 835. Appellant must overcome a presumption that the actions

challenged were part of a sound trial strategy. *Strickland*, 466 U.S. at 690 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The post-trial record contains ample evidence that Appellant's two trial defense counsel together demonstrated considerable competence and care in all aspects of their representation. After Appellant informed counsel that she was going to miss the deadline for restitution, counsel communicated with the Government, seeking in effect to re- negotiate the deadline, without success. Counsel have persuasively explained why a guilty plea remained the better choice. The only area we see where one might reasonably question their representation of Appellant pertains to the choice of forum.

Appellant had a strong sentencing case. Three enlisted superiors and her current executive officer testified that she was in the top twenty percent of personnel in her specialty with whom they had worked. The executive officer expressed the hope that she would return to his command. Her performance evaluations bespeak a very good performer, and the circumstances of her isolated offense were not without extenuation. The question is, did counsel consider and offer the option of pleading guilty with sentencing by members? At the post-trial hearing, almost twenty months after the trial, Appellant thought that option had not been presented to her, and that if it had been presented, "it would have made a difference to me," with the implication that she might well have chosen that option. (Post-trial R. at 40-41, 54-55.)

The military judge found "that Appellant was generally [apprised] of and understood the rights she was giving up by going judge alone and the risks and benefits associated with being heard by members either as the fact-finder or to render sentence or both," noting Appellant's testimony to the contrary. (Finding of Fact 3b, Post-trial Appellate Exhibit XVI at 4.) This finding is supported by the testimony of both counsel and is not clearly erroneous. (Post-trial R. at 197-201, 265-270.)

It is not difficult to reconcile Appellant's post-trial outlook with the conclusion that the member-sentencing option was presented before trial but not selected. As her lead defense counsel testified, "I felt that she was a very sympathetic character," a point in favor of sentencing

by members, "but one of the trade-offs in that situation was that . . . [w]e had what we thought was a very good protection on confinement."[6] Twenty months after the trial, confinement might seem less important than it did prospectively, compared to a bad-conduct discharge with its lasting effects. Even at the post-trial hearing, Appellant testified that she had been willing to accept only three months of confinement to avoid a bad-conduct discharge. (Post-trial R. at 41.)

The conclusion is inescapable that if counsel recommended against sentencing by members, such advice does not rebut the presumption of a sound trial strategy. It is certainly clear that there is no basis for saying counsel were not functioning as the counsel guaranteed by the Sixth Amendment, nor can it be said that Appellant was deprived of a fair sentencing. *See Caldwell*, 48 M.J. at 835. Appellant's counsel were far from ineffective.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judge LODGE concurs.

LODGE, Judge (concurring):

I write a separate concurring opinion to express my strong belief that the record is replete with indications that Appellant clearly understood the strategy that she and counsel followed in pleading guilty before the military judge even without the protections offered by the previously negotiated pretrial agreement, and there was no evidence of ineffective assistance of counsel. Appellant's sentencing witnesses presented a very strong case against the issuance of a bad-conduct discharge, but the military judge awarded one regardless, and the Convening Authority was unconvinced by Appellant's clemency submission to disapprove the discharge. While members might have reached a different sentencing decision, the minimal confinement awarded

---

[6] The pretrial agreement provided that confinement in excess of thirty days would be suspended. (Appellate Ex. X.)

coupled with the bad-conduct discharge is a strict sentence, but not unduly strict so as to justify sentence modification under our Article 66 authority.

JOHNSON, Judge (dissenting):

A trial judge is required to strike any provision in a pretrial agreement (PTA) which he finds violates public policy, appellate case law, or his own notions of fundamental fairness. *United States v. Green*, 1 M.J. 453, 456 (C.M.A. 1976). One of the PTA provisions in this case included a condition precedent that should have called into question its fundamental fairness. In addition, a court of criminal appeals may approve only that part of a sentence that it finds "should be approved." Article 66(c), UCMJ. Based on the facts and circumstances here, the punitive discharge should not be approved. Accordingly, I respectfully dissent.

Appellant entered into a PTA with the Convening Authority. In exchange for waiving her right to plead not guilty and require the Government to expend time and money to prove its case beyond a reasonable doubt, waiving her right to have her case heard by members, waiving her right to have the Government expend money to fund witness travel, and agreeing to enter into a stipulation of fact and stipulation of expected testimony and pay full restitution in the amount of $3000 in the form of a money order,[7] the Convening Authority agreed to limit confinement to thirty days and suspend any bad-conduct discharge[8] if restitution was made by Friday, August 21, 2009. This was the bargain. Appellant pled guilty before a judge alone, saved the Government money by not requiring witness travel, by expediting the court-martial and by entering into stipulations, and also paid full restitution, albeit on Tuesday, August 25, 2009. The Convening Authority declined to suspend the bad-conduct discharge (BCD) because Appellant did not pay restitution on Friday, August 21, 2009. It is the restitution provision in the PTA that is the subject of this dissent.

---

[7] There were other provisions in the PTA as well, but they are not discussed here.
[8] The Convening Authority agreed to suspend the punitive discharge for a period of twelve months from the date of the action at which time the suspended punitive discharge would be remitted.

Appellant signed the PTA on August 13, 2009; the Convening Authority signed the PTA on August 17, 2009. Appellant had four days[9] to deliver a $3000 money order to the trial counsel. Was requiring Appellant to produce a $3000 money order within four days a fundamentally fair provision in the PTA?

During the *DuBay*[10] hearing, the trial counsel indicated they set the August 21, 2009 deadline because they needed a week to prepare for a litigated trial. The *DuBay* hearing judge indicated during the hearing that the August 21, 2009 deadline "was kind of an arbitrary date."

If the intent for the restitution deadline provision was to give the Government ample time to prepare for a litigated trial, then restitution made on Tuesday, August 25, 2009 would have met the spirit of the PTA because the trial was a week away at that time. However, if the August 21, 2009 deadline was set with the intent that Appellant **would not** be able to meet it, then the spirit of the PTA seemingly would have been to induce Appellant to waive important constitutional rights without the benefit of a suspended BCD. It is this latter interpretation of the spirit of the PTA that casts doubt on the fundamental fairness aspect of the restitution provision.

The record reflects that when the trial judge examined Part II of the PTA, he did not realize that Appellant would not have the BCD protection guaranteed by the PTA because she had missed the deadline by two duty days. Trial and defense counsel corrected the judge on the record and informed him that Appellant had missed the deadline and, therefore, would not reap the benefit of a suspended punitive discharge. The trial judge then asked Appellant if she understood the effect of missing the deadline. What remains unanswered is whether the trial judge considered the fairness of the restitution provision. Did he consider whether requiring an E-5, who was already having fiscal problems, to produce a $3000 "money order" within four days of signing the PTA was a reasonable term? Did he consider the time zones under which

---

[9] I recognize the majority opinion indicates the four-day period to make restitution was self-imposed by Appellant. I disagree. Appellant's restitution obligation did not materialize until the Convening Authority, the other party to the contract, signed the PTA. Upon the Convening Authority's signature, the PTA became binding. The amount of time expended to secure the Convening Authority's signature was solely under the government's control. Further, it seems unreasonable to expect a "cash-strapped" Appellant currently under charges for larceny to transfer $3000 from her account in California any earlier than her defense team had advised, which date was after the Convening Authority signed.

[10] *United States v. DuBay*, 17 USCMA 147, 37 C.M.R. 411(1967).

Appellant would have to operate in light of the physical locations of her defense team and the banking institutions with which Appellant had to engage to secure restitution? Did he wonder whether Appellant's superiors afforded her adequate time to negotiate with her banking institutions to transfer and convert liquid assets into a form that was acceptable to the Government? Just how much thought was given to the fundamental fairness of the restitution provision?

Evidence adduced at the *DuBay* hearing reveals Appellant, who was physically located in Seattle, Washington, encountered grave difficulty securing $3000 from her credit union account in California. There were problems with transferring the money because of an internal bank "hold" on the deposited funds. There were computer connectivity issues while she was underway.[11] Appellant's bank could not issue a money order. There was evidence that Appellant encountered difficulty maintaining communication with her defense team based on the connectivity issues. Additionally, there was evidence that the Convening Authority and his staff judge advocate (SJA) did not expect Appellant to make restitution. The SJA indicated the Convening Authority thought the BCD was appropriate in this case, because Appellant "isn't the kind of person who should be in the Coast Guard." Had the trial judge inquired about the deadline provision in the PTA, perhaps he would have heard enough testimony from which to decide the fundamental fairness question.

The record is silent as to what the trial judge considered when he decided that the restitution provision of the PTA did not violate his own notions of fundamental fairness. *Green*, 1 M.J. at 456. A judge's determination of whether a clause violates his own notions of fundamental fairness should be reviewed under an abuse of discretion standard. *United States v. Sunzeri*, 59 M.J. 758 (N.M.Ct.Crim.App. 2004) (citing *United States v. Cassity*, 36 M.J. 759 (N.M.C.M.R. 1992)). The trial judge here should have delved deeper concerning the paragraphs in the PTA that controlled whether Appellant's punitive discharge would be suspended or not. I cannot say that the trial judge did not abuse his discretion when he made his fundamental fairness determination.

---

[11] Appellant testified that email connectivity was sporadic while underway. Once or twice a week they did not have access to email. There was no evidence presented at the *DuBay* hearing, however, concerning whether the email connectivity problems directly affected Appellant's ability to secure a $3000 money order.

Alternatively, I rely simply on this appellate court's Article 66(c) power to decide that based on the circumstances found in the entire record, the bad-conduct discharge should not be approved. *United States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F. 2010) (citing *United States v. Christopher*, 13 USCMA 231, 32 C.M.R. 231 (1962)).



For the Court,

L.I. McClelland
Chief Judge