# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, COOPER, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist BRANDON E. LATHROP, JR.**
**United States Army, Appellant**

ARMY 20230506

Headquarters, III Corps and Fort Cavazos
Tyler J. Heimann, Military Judge
Colonel Terri J. Erisman, Staff Judge Advocate

For Appellant: Major Robert W. Rodriguez, JA, Captain Robert W. Duffie, JA.

For Appellee: Major Justin L. Talley, JA.

14 February 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

COOPER, Judge:

Appellant was convicted and sentenced on 26 September 2023. However, his record of trial did not arrive to this court until 23 April 2024 — 211 days later. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant raised matters alleging unreasonable post-trial delay and requests this court grant appropriate relief.[1]

Having considered the entire record, we do not find a due process violation. However, we agree the post-trial delay was excessive and in our decretal paragraph, grant appropriate relief under Article 66.

---

[1] We have given full and fair consideration to the remaining matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

## BACKGROUND

On 26 September 2023, a military judge sitting as a special court-martial with the authority to adjudge a bad conduct discharge (BCD), convicted appellant, pursuant to his pleas, of three specifications of domestic violence, in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. §928b (2019) [UCMJ]. In accordance with his plea agreement, the military judge sentenced appellant to a bad conduct discharge and 10 months confinement.

Ten days after the court-martial adjourned, the government received appellant's clemency matters under Rule for Courts-Martial [R.C.M.] 1106 where appellant requested waiver and deferral of automatic forfeitures. Upon receipt of appellant's matters, the government determined portions of them included information prohibited by R.C.M. 1109.[2] The government redacted those portions of the R.C.M. 1106 submission before presenting them to the Convening Authority (CA) for action.[3]

On 1 December 2023, the CA approved appellant's request to defer and waive automatic forfeitures and took no action on the findings or sentence. On 12 December 2023, the military judge entered judgement and 17 days later, authenticated the record. The court reporter certified the record of trial (ROT) on 29 December 2023, the same day the military judge authenticated it. The ROT was mailed on 5 April 2024 and received by this court on 23 April 2024—211 days from adjournment.

A post-trial delay memorandum (hereinafter "delay memo") for this case, signed by the post-trial paralegal, accompanied the hard copy ROT. The delay memo recited, almost verbatim, the timeline appearing on the chronology sheet received in the electronic version of the record (E-ROT), with two relevant differences—first, the date the ROT was mailed in the hard copy reflected 5 April

---

[2] Rule for Courts-Martial 1109 (d)(3)(c)(ii) provides: "The convening authority shall not consider any matters that relate to the character of a crime victim unless such matters were presented as evidence at trial and not excluded at trial."

[3] Block 11 of the Staff Judge Advocate (SJA) advice noted the following: "the matters presented to the convening authority for his review and consideration prior to taking action were redacted due to the matters containing prohibited matters related to the character of the victim that were not presented at trial and not excluded at trial." *See* R.C.M. 1109(d)(3)(C)(ii).

2024, rather than 8 January 2024[4], and second, the delay memo accounted for a 25 March 2024, Memorandum of Record (MFR) signed by the SJA. Notwithstanding those differences, the delay memo did not explain any of the delay between 29 December 2023 and 5 April 2024.

## LAW AND DISCUSSION

We review allegations of unreasonable post-trial delay *de novo*. Whether a post-trial processing timeline is reasonable or dilatory is determined on a case-by-case basis. *United States v. Abdullah*, _ M.J. _ (Army Ct. Crim. App. 5 November 2024); *see also United States v. Winfield*, 83 M.J. 662 (Army Ct. Crim. App. 27 April 2023); *United States v. Moreno*, 63 M.J. 129, 143 (C.A.A.F. 2006). "Dilatory post-trial processing, without an acceptable explanation, is a denial of fundamental military justice." *United States v. Ponder*, ARMY 20180515, 2020 CCA LEXIS 38, at *4 (Army Ct. Crim. App 10 Feb. 2020) (summ. disp.) (quoting *United States v. Bauerbach*, 55 M.J. 501, 507 (Army Ct. Crim. App. 2001)) (granting relief for excessive post-trial delay in light of government's failure to provide adequate reasons); *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022). When reviewing for dilatory post-trial processing error, administrative or manpower constraints are not justifiable reasons for delay and delays involving clerical tasks are the "least defensible of all." *Moreno*, 63 M.J. at 143 (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990)).

"The Court of Appeals for the Armed Forces (CAAF) has recognized this court has two separate and independent avenues to provide relief for dilatory post-trial processing: (1) the Due Process Clause of the Fifth Amendment; and (2) Article 66, UCMJ." *Abdullah*, _ M.J. _ at *9 (quoting *Toohey v. United States*, 60 M.J. 100, 101-02 (C.A.A.F. 2004). Whether there is a due process violation resulting from post-trial delay is analyzed using the four factors from *Barker v. Wingo*, 407 U.S. 514 (1972): (1) length of delay; (2) reasons for the delay; (3) appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Toohey*, 60 M.J. at 102. "[N]o single factor [is] required to find that post-trial delay constitutes a due process violation." *United States v. Toohey*, 63 MJ 353, 361, (*Toohey II*) (C.A.A.F. 2006) (quoting *Moreno*, 63 M.J. at 136) (citation omitted).

Where post-trial delay is not a due process violation, this court still has "authority under Article 66[(d)(2)], UCMJ, to grant appropriate relief for excessive post-trial delay without a showing of 'actual prejudice'." *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted). In determining "excessive delay,"

---

[4] The chronology sheet included in the E-ROT was signed by the Chief of Justice (CoJ) on 9 January 2024. The chronology indicates, erroneously, that the ROT was forwarded to the reviewing authority on 8 January 2024—averring the net days from appellant's sentence to mailing the record to this court was 104 days.

this court considers "the totality of the circumstances surrounding the post-trial processing timeline for each case, balancing the interplay between factors such as chronology, complexity, and unavailability, as well as the unit's memorialized justifications for any delay" to make its determination. *Winfield*, 83 M.J. at 666.

Until its certification, the one-volume ROT exhibits efficient, reasonable post-trial processing. However, once the ROT was certified, reasonable diligence ended, and dilatory post-trial processing began. This ROT was certified on 29 December 2023, but not put in the mail until 5 April 2024. This ROT was not mailed for over three months—longer than it took to transcribe, authenticate, and certify it. Thus, the first *Barker* factor weighs in favor of appellant.

The post-trial processing memorandum does little to explain the delay. Unhelpful to our analysis was the accounting for the SJA's 25 March 2024 MFR, explaining why she sealed the unredacted R.C.M. 1106 matters. This seems to have little bearing on the processing of the case, as the SJA determined the R.C.M. 1106 matters contained prohibited material under R.C.M. 1109 prior to giving advice to the Convening Authority, on 1 December 2023, so the relevance of the 25 March 2024 MFR is unknown.

Recently, this court sitting *en banc* in *United States v. Abdullah* re-emphasized the court's interest in the SJA's explanation for post-trial delay and "the importance of providing a detailed explanation and something more than a mere recitation of the timeline of post-trial events." *Abdullah*, _ M.J. _ at *11-12. A recitation of timelines, with little to no information explaining the 98-day delay between 29 December 2023 and 5 April 2024 is all we have in this case. Thus, we resolve the second *Barker* factor in favor of the appellant.

The third and fourth factor of the *Barker* test weigh in favor of the government, as the appellant did not assert his right to a timely review and there is no prejudice alleged.[5] When there is no finding of prejudice under the fourth *Barker* factor, as is the case here, a due process violation only occurs when "in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Anderson*, 82 M.J. at 87 (quoting *Toohey II*, 63 M.J. at 362). We do not find the present case so egregious as to negatively impact the public's perception of the fairness and integrity of the military justice system. Appellant still received a

---

[5] In our analysis of prejudice under *Barker*, we considered three sub-factors: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Moreno*, 63 M.J. at 138-39 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

full and complete appellate review and nothing in the record demonstrates bad faith on the part of the Government that would legitimize a perception they intentionally delayed post-trial processing. While the 98-day unexplained delay in mailing the record shows inefficiency, we do not find under the facts and circumstances of this case that it would cause the public to doubt the fairness and integrity of the military justice system.

In finding no due process violation, we next turn to our authority under Article 66(d)(2), which allows us to provide appropriate relief if the accused demonstrates excessive delay. While 211 total post-trial processing days may not appear particularly lengthy on its face, it is excessive where there is no sufficient explanation for the 98-day delay in mailing a complete and certified record to this court.[6]

Upon a demonstration of excessive delay in the processing of the court-martial, this court may grant appropriate relief, tailored to the circumstances of the case. *Hotaling,* 2020 CCA LEXIS 449 at *9 (citing *United States v. Jones*, 61 M.J. 80, 86 (C.A.A.F. 2005) ((quoting *Tardif,* 57 M.J. at 225)). After reviewing the entire record and considering the totality of the circumstances of this case, we find a 15-day reduction to the confinement sentence is appropriate relief.

## CONCLUSION

The findings of guilty are AFFIRMED. Only so much of the sentence as provides for confinement for 9 months and 15 days, and a bad conduct discharge, is AFFIRMED.

Senior Judge FLEMING concurs.

SCHLACK, Judge, concurring in part and dissenting in part,

I concur with my colleagues that there is excessive delay warranting relief but I think the relief given is inappropriate. I disagree that there is no due process violation.

Following the post-trial changes in the Military Justice Act of 2016 (MJA 16) and this court's decisions in *Winfield* and *Abdullah*, I believe three principles guide review for excessiveness of delay under Article 66(d)(2), UCMJ and egregiousness of delay under a Fifth Amendment due process analysis: (1) the post-trial process is

---

[6] "Depositing documents in the mail does not require any specialized legal training, nor does it require any significant time commitment." *United States v. Hotaling,* ARMY 20190360, 2020 CCA LEXIS 449, at *7 (Army Ct. Crim. App. December 11, 2020).

faster than it was before MJA 16's changes; (2) unit-level explanations must actually explain the reasons for the delay; and (3) comparing the delay in the case at hand to other case delays is improper when the cases do not share the same characteristics, particularly when the other cases occurred pre-MJA 16.[7]

These three principles stem from *Winfield*'s abandoning of the timelines that established a presumption of reasonableness. In *Winfield*, this court conceded that "some cases justifiably take longer than 150 days to process for appellate review" and acknowledged that "others should take significantly less time." This court went on to say that we will "scrutinize the unit-level explanations" of the delay to determine whether the delay was reasonable *for that case* (emphasis added). 83 M.J. at 665. The effect of *Winfield*, intended or otherwise, is that the post-trial processing, and the reasonableness thereof, is unique to each case.

In my view, it is illogical to resolve the first *Barker* factor (length of the delay), for example, in favor of the government simply because the government took less time to process a one-day guilty plea record than it did to process a 30 volume, two-week contested trial in some other jurisdiction. Additionally, when a unit provides no justification for a delay in a case that "should take significantly less time" to process, the failure to explain the delay impacts public perception as much as the length of the delay itself in a post-MJA 16 world. Thus, in analyzing this case through a lens colored by the three principles above, I believe the delay in this case is both excessive and egregious.

While I agree with the majority's conclusion that the appellant himself did not experience prejudice resulting from the delay, I do think the circumstances of the delay in this case would adversely impact the public's perception of the fairness and integrity of the military justice system. One might argue that notwithstanding the government's failure to put a one-volume record into the mail for months, the appellant got the benefit of his bargain so "no harm, no foul." That argument gives short shrift to the fact that qualifying appellants are afforded post-trial due process in our system—even when they plead guilty — and while due process rights might not be at their pinnacle following a guilty plea, the process due is certainly a competent one.

---

[7] I acknowledge that the C.A.A.F compares delay in the case before them to delays in pre-MJA 16 cases. In *U.S. v. Anderson*, C.A.A.F cites *United States v. Bush*, 68 MJ 96 (C.A.A.F 2009), *United States v. Toohey*, 63 MJ 353, (C.A.A.F 2006), and *United States v. Moreno*, 63 MJ 129 (C.A.A.F 2006) for the proposition that they have seen worse in the way of length of delay. I note that the C.A.A.F. did not address the effect of the MJA 16 changes on post-trial processing and resolve the difference between this case and *Anderson* by differentiating the point in the post-trial processing timeline that the delay took place—with the military judge in *Anderson* versus after certification here.

If the public knew what caused the delay in this case—that the record was not mailed, without reason—the public's perception of the fairness and integrity of the military justice system would be adversely impacted, in my view, for at least three reasons. First, while the word "integrity" means truthfulness and veracity, it also means *reliability*. The public certainly expects, as it should, that the government is reliable enough to mail what amounted to a ream of paper in a garrison environment. This simple task inexplicably took over three months and the government's failure to explain why it took so long would lead the public to question the system's integrity.

Second, rooted in the complete lack of explanation for the delay here, it is also reasonable for the public to be concerned that had the appellant been tried at a different camp, post, or station, his certified record would have been mailed faster. In other words, appellant here was afforded less due process than appellants in other military jurisdictions, impacting the public's perception of our system's fairness. Finally, the public's perception of both the integrity and fairness of our system would be impacted because the unexplained delay and the length of the delay did nothing but guarantee appellant completed the bulk of his confinement before a meaningful review of the case could occur. Said differently — considering the record sat certified for months, it is reasonable for the public to perceive the delay was done to ensure the government got its pound of flesh. Considering the government *also* benefits from agreements to plead guilty, this is troublesome from both an integrity and fairness standpoint.

For these reasons, I would have also found a due process violation in this case and granted 98 days of confinement relief.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court