# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, ARGUELLES,[1] and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Warrant Officer One JOHN R. FREESTONE**
**United States Army, Appellant**

ARMY 20230457

Headquarters, Eighth Army
Larry B. Babin, Jr., and Matthew S. Fitzgerald, Military Judges
Colonel Rebecca K. Connally, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Beau O. Watkins, JA; Captain Stephen R. Millwood, JA (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Marc B. Sawyer, JA; Captain Alex J. Berkun, JA (on brief).

13 August 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ARGUELLES, Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of domestic violence upon his spouse in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b (2020) [UCMJ]. The panel acquitted appellant of ten other specifications of domestic violence upon his spouse. The military judge sentenced appellant to

---

[1] Judge ARGUELLES decided this case while on active duty.

forfeiture of $325 a month for four months and a reprimand.[2] The convening authority took no action on the sentence.

This case is before the court for review pursuant to Article 66, UCMJ.[3] Appellant raises two assignments of error, one of which merits discussion but no relief.[4]

## BACKGROUND

The government originally charged appellant with eleven specifications of domestic violence against his spouse, covering the period from 2019 through 2021. The panel returned a guilty verdict on only Specification 10, which alleged a violation of Article 128b(2)(B): "Any person who–with intent to threaten or intimidate a spouse, an intimate partner, or immediate family member of that person– . . . commits an offense under this chapter against any property . . . shall be punished as a court-martial may direct." Specification 10 specifically alleged:

> In that [appellant] did, at or near San Antonio, Texas, between on or about 28 October 2021 and on or about 4 November 2021, with the intent to threaten or intimidate [victim], his spouse, commit an offense in violation of the UCMJ against any property, to wit: willfully and wrongfully damage a laptop with his hand, the amount of said damage being of some value, the property of [the victim].

---

[2] The Statement of Trial Results (STR) incorrectly lists the forfeiture as being $375 a month. Because the forfeitures are part of the sentence, we exercise our authority under Article 66(d)(1), UCMJ, and Rules for Courts-Martial [R.C.M.] 1111(c)(2) and 1101(e)(2), to correct the STR.

[3] For purposes of clarity and efficiency, subsequent reference to the UCMJ will exclude citation to that work.

[4] We have also considered the two matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). With the exception of the post-trial delay claim, which only two of the three judges of the panel find to be without merit, *see* Concurring and Dissenting Opinion below, as a panel we find the other *Grostefon* claims to be without merit.

Although not expressly listed in the charging language of Specification 10, the applicable "offense under this chapter" element of the Article 128b(2)(B) charge was Article 109, destruction of property other than military property.

The victim testified at trial that, during an argument while she and appellant were in a hotel room in San Antonio, appellant destroyed her laptop. The victim explained that although she begged appellant not to follow through on his threats to break the laptop, which she needed for her schoolwork, he destroyed it in a fit of rage. The victim captured the entire incident on an audio recording made with her phone, including appellant cursing and yelling at her both before and after he destroyed the laptop.

With respect to Box 32 of the Statement of Trial Results (STR), which asks "Has the accused been convicted of a misdemeanor crime of violence (18 U.S.C. § 922(g)(9))," the military judge checked "Yes."

## LAW AND DISCUSSION

Appellant now asserts that the military judge erred by indicating an affirmative response in Box 32 and asks us to remand the matter to the military judge to correct this error. As set forth below, while we agree with appellant that the military judge erred, because we lack jurisdiction over this claim, we cannot provide him with any relief.

### A. Was Appellant convicted of a "crime of misdemeanor violence?"

First, given that the maximum incarceration penalty for the violation of Article 128b at issue in this case is four years, this offense is most likely not a "misdemeanor" under federal law. *See Manual for Courts-Martial, United States* (2024 ed.) [MCM], pt. IV, ¶¶ 78a(d)(2), 45(d)(3)(a); 18 U.S.C. § 921(a)(20)(B) (any state offense classified "as a misdemeanor and punishable by a term of imprisonment of two years or less" is not a "crime punishable by imprisonment for a term exceeding a year").[5]

Second, and more fundamentally, as described above the panel found appellant to be guilty of intimidating his spouse by destroying her computer. The term "misdemeanor crime of domestic violence," however, is defined as an offense that is "(i) a misdemeanor under Federal, State, Tribal, or local law; and" "(ii) has,

---

[5] The military judge acknowledged this fact by correctly marking "Yes" in Box 31 of the STR, "Has the accused been convicted of a crime punishable by imprisonment for a term exceeding one year (18 U.S.C. § 922(g)(1))."

3

as an element, *the use or attempted use of physical force*, or the threatened use of a deadly weapon, committed by a current or former spouse . . . ." 18 USC § 921(a)(33) (emphasis added).

In *United States v. Castleman*, the Supreme Court held that the use of "force" as defined in 18 U.S.C. § 921(a)(33) requires an "offensive touching" that "describes one of the elements of the common-law crime of battery," and does not include "intellectual force or emotional force." 572 U.S. 157, 162-63 (2014). Moreover, the Court held that in order to qualify as a misdemeanor crime of domestic violence under 18 U.S.C. §§ 921(a)(33) and 922(g), "a 'bodily injury' must result from 'physical force.'" *Id.* at 170; *see also United States v. Scott*, 990 F.3d 94, 112 (2d Cir. 2021) ("First, the relevant physical force is that which *causes* physical injury to a victim, not that which is physically performed by a defendant.") (emphasis in original); *United States v. Defrance*, 124 F.4th 814, 818 (9th Cir. 2024) ("The infliction of emotional anguish does not require the use of physical force as that term is defined by federal law.").

Accordingly, even though the government correctly charged Specification 10 as a "domestic violence" offense pursuant to Article 128b, because there was no allegation or evidence that appellant used any physical force against, or caused any injury to the person of his spouse, his conviction does *not* qualify as a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9). As such, the military judge erred when he checked Box 32 "Yes."

## B. Can this court correct the error?

In pertinent part, Article 66(d)(1)(A) provides "[i]n any case before the Court of Criminal Appeals under subsection (b), the Court *may act only with respect to the findings and sentence* as entered into the record under section 860c of this title (article 60c)." (emphasis added).

In *United States v. Williams*, the Court of Appeals for the Armed Forces [CAAF] held that under Article 66(d)(1), service-level courts of criminal appeals [CCA] may act only with respect to the "findings and sentence," which do not include Block 32 of the STR. 85 M.J. 121, 126 (C.A.A.F. 2024). As such, the CAAF in *Williams* vacated the modifications that this court made to Block 32 as an "ultra vires act that exceeded its statutorily defined authority to act with respect to the findings and sentence." *Id.* at 127. In *United States v. Johnson*, the CAAF recently reiterated:

> But under Article 66(d)(1), UCMJ, "the [CCA] . . . may act only with respect to the *findings* and *sentence* as entered into the record under [Article 60c, UCMJ]." Because, as explained above, the § 922 indication is

4

> neither a finding nor a sentence, even if it is part of the judgment, it is not a part of the judgment capable of being "affirmed or set aside as incorrect in law by the Court of Criminal Appeals . . . ."

__ M.J. __, 2025 CAAF LEXIS 499, at *10 (C.A.A.F. 24 Jun. 2025) (emphasis, second alteration in original); *see also United States v. Saul*, __ M.J. __, 2025 CAAF LEXIS 578, at *2 (C.A.A.F. 21 Jul. 2025) ("In accordance with our recent decision in *United States v. Johnson*, __ M.J. __ (C.A.A.F. 2025), we hold this Court lacks the authority to modify the indorsement on Appellant's Entry of Judgment Form."); *United States v. George*, __ M.J. __, 2025 CAAF LEXIS 577, at *2 n.1 (C.A.A.F. 21 Jul 2025) (same).

Conceding that this court may not correct the military judge's error itself, appellant instead argues that we should remand this case to the military judge to fix the error. The government agrees this is the appropriate remedy. In support of his proposed remedy, appellant contends that Article 66(f)(3) provides a CCA with the jurisdiction and authority to "order a hearing as may be necessary to address a substantial issue, subject to such limitations as the Court may direct and under such regulations as the president may prescribe." *See also* Joint Appellant Rules of Procedure [JRAP] Rule 29(b)(2) (under Article 66(f) a "remand may be appropriate, for instance, when a matter in the case requires corrective action by the trial court such as to *correct an error in the judgment* . . . .") (emphasis added).

As such, appellant asserts that because Article 60(c)(1)(A) provides that "[t]he judgment of the court" shall consist of, *inter alia*, the STR, under Article 66(f)(3) and the JRAP we have the authority and jurisdiction to remand this case with a directive to the trial court to fix the error in the "judgment."

Our reading of both *Williams* and *Johnson* is that because Block 32 of the STR is not part of the findings or sentence, this court lacks jurisdiction to "take action" on this error, regardless of its merit. Likewise, although the CAAF did not address Article 66(f)(3) in either *Williams* or *Johnson*, we read both of those cases to stand for the proposition that pursuant to Article 66(d)(1) we may "take action" by ordering an Article 66(f) remand *only* with respect to those "substantial issues" pertaining to either the findings or the sentence.

Along the same lines, we note that in *Williams* and *Johnson* the CAAF did not address R.C.M. 1101(e)(2) (providing that a CCA "may modify the Statement of Trial Results in the performance of their duties and responsibilities)" or R.C.M. 1111(c)(2) (providing that a CCA "may modify a judgment in the performance of their duties and responsibilities"). But, for the reasons described above, under *Williams* and *Johnson*, we lack the authority to either correct this particular error or

5

take action to remand the case to the trial court to correct it.

In conclusion, although we find that the military judge erred in affirmatively indicating on the STR that appellant committed a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9), we lack the jurisdiction or authority to take any corrective action.[6]

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge POND and Judge JUETTEN concur.

Judge ARGUELLES, concurring in part and dissenting in part:

I concur with the majority's judgment affirming the findings of guilty and holding that we lack jurisdiction to correct Box 32 of the STR, but write separately for two reasons: (1) to respectfully request that the CAAF reconsider its analysis and holdings in *Williams* and *Johnson*; and (2) because I respectfully disagree with the majority's determination that appellant is not entitled to any sentence relief based on the government's egregious post-trial delay.

*A. Williams and Johnson*

First, the CAAF has not directly addressed the arguments raised by appellant and conceded by the government, that Articles 60(c)(1)(A) and 66(f)(3) allow this court to remand this case to the military judge to fix the error in the "judgment."

Moreover, I harbor concerns about the serious potential ramifications of the CAAF's ruling that this court cannot correct what might be nothing other than a clerical error. Put another way, given that the primary purpose of Boxes 31 and 32 of the STR is to flag those members of the military whose convictions prohibit them

---

[6] It is also worth noting that both appellant and the government had at least two avenues to remedy any errors in the STR in the trial court prior to the filing of any appeal. *See* R.C.M. 1104(b)(1)(D), (b)(2)(A) ("[a]n allegation of error in the Statement of Trial Results" may be raised in a post-trial motion filed with the military judge); R.C.M. 1104(b)(2)(C) ("[A] motion to correct a clerical error . . . in a judgment entered by the military judge shall be made within five days after a party is provided a copy of the judgment").

from purchasing firearms, there are potential real-world, severe consequences when those boxes are checked in error. *See, e.g., Holcombe v. United States*, 2021 U.S. Dist. LEXIS 125971, at *153 (W.D. Tex. 6 Jul. 2021) (holding that Air Force "leadership negligently supervised their agents in the collection, maintenance, and submission of [convicted service member's] fingerprints and criminal convictions to the FBI, and that their negligent supervision was a proximate cause" of the mass shooting at First Baptist Church in Texas).

Accordingly, I respectfully encourage the CAAF to reconsider its analysis and holding that service-level appellate courts lack the jurisdiction to correct errors in the STR pertaining to firearm restrictions. *See United States v. Baker*, 32 M.J. 290, 293 (C.M.A. 1991) ("It is well settled that courts possess 'inherent power to correct their records, where the correction relates to mistakes, or errors, which may be termed clerical in their nature, or where it is made in order to conform the record to the truth.'" (internal citation omitted)); *United States v. Allbery*, 44 M.J. 226, 228 (C.A.A.F. 1996) (holding if a service level appellate court believes the underlying logic of one of the CAAF's decisions has changed, its recourse is "to express that viewpoint and to urge our reconsideration of our precedent.").

## B. Post-Trial Delay

### 1. Background

Although the Record of Trial (ROT) was 1,071 pages, it took the government almost a year (347 days) to process the record. The first significant delay in this case was between the conclusion of the trial, 25 August 2023, and the date the court reporter *started* the transcription of the record, 5 December 2023. The explanation for this delay provided by the Office of the Staff Judge Advocate's (OSJA) post-trial processing Memorandum for Record (MFR) (dated 6 August 2024) is nothing more than boilerplate: "The transcription was delayed due to the backlog of audio, shortage of personnel, numerous court-martials [*sic*] and unit requirements."

The military judge who presided over appellant's court-martial was responsible for the next significant, and perhaps most egregious, delay in the case. Although he received the ROT on 13 March 2024, he did not authenticate it until 17 May 2024, a delay of over two months. The military judge did not provide any explanation or justification in the record for his delay.

The next significant delay in this case occurred between 17 May 2024, when the military judge finally certified the record, and 8 July 2024, when the court reporter certified the ROT. Again, the explanation in the MFR is severely lacking and essentially boilerplate: "The certification of the ROT was delayed due to limited availability of personnel and tasking to other court-martials [*sic*] requiring extended periods of TDY."

### 2. *Law and Discussion*

We review allegations of unreasonable post-trial delay de novo. *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)).

Since at least 2002, the Court of Appeals for the Armed Forces [CAAF] has recognized that service level courts of appeal have two separate and independent avenues to provide relief for dilatory post-trial processing: (1) the Due Process Clause of the Fifth Amendment; and (2) the statutory basis under Article 66. *See, e.g., Toohey v. United States*, 60 M.J. 100, 101-02 (C.A.A.F. 2004) (holding "the right to timely appellate review has both statutory roots [under Article 66] and constitutional roots [under the Due Process Clause].").

In *Toohey*, the CAAF adopted the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether the post-trial delay constitutes a due process violation: "(1) length of the delay; (2) reasons for the delay; (3) the appellant's assertion of his right to a timely appeal; and (4) prejudice to the appellant." 60 M.J. at 102. When there is no finding of prejudice under the fourth *Barker* factor, a due process violation only occurs when "'in balancing the three other factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system.'" *Anderson*, 82 M.J. at 87 (quoting *Toohey*, 63 M.J. at 362).

Statutorily, Article 66(d)(2) provides in pertinent part that this court "may provide appropriate relief if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record . . . ." There is, however, no prejudice requirement under our Article 66 post-trial delay analysis. *See United States v. Tardiff*, 57 M.J. 219, 224 (C.A.A.F. 2002); *United States v. Grant*, 82 M.J. 814, 819 (Army Ct. Crim. App. 2022) ("Absent a due process violation, we still have authority under Article 66, UCMJ, to grant relief 'when appropriate under the circumstances.'"). Instead, in determining whether relief is appropriate for "excessive delay" under Article 66(d)(2), this court considers "the totality of the circumstances surrounding the post-trial processing timeline for each case, balancing the interplay between factors such as chronology, complexity, and unavailability, as well as the unit's memorialized justifications for any delay," along with the nature of the conduct at issue. *United States v. Winfield*, 83 M.J. 662, 666 (Army Ct. Crim. App. 2023).

First, the boilerplate justifications provided in the MFR fall embarrassingly short of the required explanation and justification for post-trial delay. *See, e.g., United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) ("[P]ersonnel and administrative issues, such as those raised by the Government in this case, are not legitimate reasons justifying otherwise unreasonable post-trial delay"); *Winfield*, 83

M.J. at 665-66 ("Staff judge advocates who decline to memorialize delays with *thorough, credible, and relevant specificity* do so at the peril of their units' cases on appeal.") (emphasis added); *United States v. Jackson*, 74 M.J. 710, 719 (Army Ct. Crim. App. 2015) (rejecting the government's explanation for the delay based on "court reporter shortages and high number of cases tried."); *United States v. Bauerbach*, 55 M.J. 501, 507 (Army Ct. Crim. App. 2001) (post-trial delay relief appropriate where "nothing in the record or allied papers that attempts to justify this delay."); *United States v. Garrigus*, ARMY 20220259, 2023 CCA LEXIS 335, at *3 (Army Ct. Crim. App. 9 Aug. 2023) (summ. disp.) ("Either way one looks at it - whether under *Brown* or *Winfield* - units owe an explanation for such slow post-trial action. When those who administer military justice in the field ignore binding precedent, we should not tolerate the resultant strain upon our system's credibility.").

In light of the precedent of both this court and that which CAAF issued both before and after the OSJA issued its MFR in this case, to say that the MFR falls far short of even the bare minimum is an understatement. *See United States v. Abdullah*, 85 M.J. 501, 2024 CCA LEXIS 479 at *11-12 (Army Ct. Crim. App. 2024) ("We not only re-emphasize our interest in the Staff Judge Advocate (SJA) providing an explanation for periods of unexplainable post-trial delay, but we also take this opportunity to re-emphasize the importance of providing a detailed explanation and something more than a mere recitation of the timeline of post-trial events. A memorandum with nothing more than a mere timeline and scant information explaining periods of significant delay is unhelpful to this court and will not weigh in favor of the government in our analysis of post-trial delay.").

Second, the military judge's failure to even attempt to justify his delay of over two months in authenticating the record is equally problematic. As we previously noted in *United States v. Pulver*:

> With respect to appellant's claim for relief due to post-trial delay, we note that it took the military judge approximately 45 days to complete his certification. We find the military judge's asserted justification for the delay, that he was hindered by his civilian and other military judge commitments, to be unsatisfactory. As both the Court of Appeals for the Armed Forces (CAAF) and this Court have repeatedly emphasized, certifying the record needs to be a *priority* for all parties to the process, including the military judge.

ARMY 20210670, 2023 CCA LEXIS 298, at *1 n.1 (Army Ct. Crim. App. 16 Jul. 2023) (summ. disp.) (emphasis in original).

In short, the cumulative nature of the unit's gross failure to properly document the multitude of delays on the part of the OSJA, combined with the military judge's failure to provide any justification for his excessive delay, clearly merits Article 66(d)(2) sentencing relief in the form of striking the adjudged reprimand.[7] Such relief would still adequately reflect the criminality of appellant's conduct, while at the same time acknowledging the woefully inefficient post-trial processing of his case. *See United States v. Dickerson*, ARMY 20220118, 2025 CCA LEXIS 114, at *23-24 (Army Ct. Crim. App. 20 Mar. 2025) (mem. op.) (setting aside bad-conduct discharge as a remedy for egregious post-trial delay under Article 66(d)(2)); *Lathrop*, 2025 CCA LEXIS 63, at *7 (providing post-trial delay relief under Article 66(d)); *United States v. Padgett*, ARMY 20220169, 2025 CCA LEXIS 50, at *7 (Army Ct. Crim. App. 5 Feb. 2025) (summ. disp.) (providing post-trial delay relief under Article 66(d)).

Accordingly, while I agree that appellant's finding of guilty should be affirmed and that this court lacks jurisdiction to correct Box 32 of the STR, with respect to the sentence I respectfully disagree with my colleagues and would affirm only so much of the sentence as provides for forfeitures of $325 a month for four months.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[7] Although appellant has not shown any prejudice, a colorable argument can be made that, if known to the public, the circumstances of the delay in this case would adversely affect its perception of the fairness and integrity of the military justice system. *See United States v. Lathrop*, ARMY 20230506, 2025 CCA LEXIS 63, at *9-11 (Army. Ct. Crim. App. 14 Feb. 2025) (mem. op.) (Schlack J., dissenting). This issue need not be ultimately decided, however, as relief is appropriate under Article 66(d)(2).